ings of fact numbered 27, 32, 37, and 38 are reversed and stricken out.

As so modified, I advise that the judgment and order be affirmed, without costs to either party. All concur.

---

## SHANKS v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Second Department. July 31, 1914.)

1. COMMERCE (§ 27*)—FEDERAL EMPLOYERS' LIABILITY ACT—EMPLOYÉ ENGAGED IN INTERSTATE COMMERCE.

The test of whether a railroad employé is engaged in interstate commerce, so as to be within the protection of the federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), is the nature of the work being done at the time of the injury and not what the employe expects to do after completing his task.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

2. COMMERCE (§ 27*)—FEDERAL EMPLOYERS' LIABILITY ACT—EMPLOYÉ ENGAGED IN INTERSTATE COMMERCE.

Since a railroad employé is engaged in interstate commerce, so as to be within the protection of the federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), only where his relation to traffic at the time of his injury was so direct that his injury tended to stop or delay the movement of a train engaged in interstate commerce, he is not entitled to the protection of such act, where he is injured while installing machinery in a general repair shop of a railroad system which has extensive local train service as well as interstate traffic.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

Burr, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Bruce Shanks against the Delaware, Lackawanna & Western Railroad Company. From judgment for plaintiff and an order denying motion to dismiss the complaint and granting plaintiff's motion for general verdict in his favor and an order denying [motion] for new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

Frederick W. Thomson of New York City, for appellant.
Joseph A. Shay, of New York City, for respondent.

PUTNAM, J. Defendant has been held liable under the federal Employers' Liability Act of April 22, 1908 (35 Stat. 65), for an injury to plaintiff at Kingsland, New Jersey, on January 14, 1912, and after the Workmen's Compensation Law of New Jersey was in force. Plaintiff was a machinist in the defendant's railroad repair shops. He was doing overtime work on Sunday to remove a shaft-hanger bolted to a steel girder or truss, to be reset on same girder about two feet

from its original position.  This truss was one of a pair of longi-
tudinal girders, a little over 50 feet apart, upon which were the tracks
which carried an overhead traveling crane.  The shaft-hanger con-
veyed power to a shaping machine on which brasses, keys, and cotters
were finished for engine connecting rods.  Apparently this machine
was being removed as matter of shop arrangement, perhaps to make
room for other tools near it.  This was being done on Sunday, doubt-
less so as not to interrupt the full week day activities.  After remov-
the bolts and detaching the shafthanger, plaintiff was about to drill
new holes.  He tried to reach over and down on the other side of
the girder to the points where these holes came out.  While he was
thus reaching over the track of the crane, its wheels ran over his
hands, causing the injuries for which this action is brought.

[1] Plaintiff had previously worked repairing parts of locomotives,
but at this time, and on the day before, he had been assigned to the
wheelwright work of attending to the shop machines and of keeping
them in repair.  These shops at Kingsland were defendant's general
repair shops in New Jersey.  Often entire locomotives came there;
sometimes only parts were sent there to be repaired and returned to
the roundhouses.  Repairs at these shops were on any locomotives in-
discriminately, regardless of whether they ran in interstate or intra-
state traffic.

· The remedy by the federal statute is "to any person suffering in-
jury while he is employed by such carrier in such commerce."  These
strict limitations are so as not to trench on the rights of the states.
Congress can legislate concerning the mutual rights and liabilities of
master and servant, when both are actually engaged in interstate com-
merce.  Emp. Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L.
Ed. 297.

The employé must be himself engaged in commerce, or his work
must be a part of interstate commerce under federal protection, but
this is not his general line of work, but "the particular service in which
the employé is then engaged."  The test declared by the Supreme
Court of the United States is the "nature of the work being done at
the time of the injury," not what the employé expects to do after
the completion of his task.  Illinois Central R. R. Co. v. Behrens,
233 U. S. 473, 478, 34 Sup. Ct. 646, 58 L. Ed. ——.

[2] This plaintiff's recovery would require us to hold that the gen-
eral repair shop of a railroad system, which has extensive local train
service as well as through traffic—that the shop itself is an instru-
mentality of interstate commerce in the sense that a switch, or a
bridge, has been so judicially declared.  How carefully the courts
discriminate is seen as to the crew of a switch engine, which some-
times moves local cars, and again cars carrying freight for points
beyond the state; the men working indiscriminately on both kinds of
traffic.  But these employés are not thereby held to be engaged in in-
terstate commerce;  on the contrary, such switching train work,
though in constant change, is to be distinguished according to its char-
acter at the time of the employé's injury, and the liabilities by the
federal act are applied only to the handling and movement of cars

. that are then bound to or from across state lines. Illinois Central R. R. Co. v. Behrens, supra.

A test to decide if an injury to a railroad employé is within the protection of the act is its effect on the course and current of interstate commerce. Was the employé's relation to traffic so close and direct that his injury tended to stop or delay the movement of a train engaged in interstate commerce? Lamphere v. Oregon R. & Nav. Co., 196 Fed. 336, 116 C. C. A. 156, 47 L. R. A. (N. S.) 1. It is on this principle that not only the train crew, but an employé repairing its track or switch, is under the protection of the act. And as a bridge, if not kept in suitable condition, may by its defects interrupt commerce, the duty to repair such an instrumentality carries with it the protection of employés so engaged. Pedersen v. D., L. & W. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125. And one working to repair a refrigerator car (Northern Pacific R. Co. v. Maerkl, 198 Fed. 1, 117 C. C. A. 237), or at a shop, repairing a locomotive that has been in interstate commerce, is held within the statute (Law v. Illinois Central R. Co., 208 Fed. 869, 126 C. C. A. 27). But the work of millwrights, installing machine tools in a general repair shop, is not interstate commerce, even if such tools are capable of use in repair of engines or cars. Many incidents of railroading cannot in any real or substantial sense be interstate commerce. For greater facility to expedite repairs, a carrier may operate its own foundry and forges, with warehouses to store axles and car wheels. But the labor in setting up and maintaining such a plant is not thereby made commerce. If a car comes to such a shop, those who work on the car may be engaged upon an instrumentality of transportation. The shop machines, however, like the supplies within the paint shop, have n reached the connection with the movement of trains required to br those so engaged under this act. To hold otherwise would ex the purview of the statute beyond its construction by the f courts.

I advise that the judgment and orders be reversed, with a judgment dismissing the complaint, with costs, but without prejudi to plaintiff's remedy under the Workmen's Compensation Acts of th state of New Jersey. All concur, except BURR, J., who dissents.

BURR, J. I dissent. The only question is whether plaintiff, at the time of his injury, was engaged in interstate commerce. The test, so far as plaintiff's occupation is concerned, has been stated thus:

"Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier?" Pedersen v. Del., Lack, & West. R. R., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125.

Plaintiff was a machinist, employed by the defendant at its shops at Kingsland. He testified:

"The work I was engaged in was rush work. These engines would be pulled into Hoboken, and if anything would be wrong they would send the parts to Hoboken, and I would have to get those parts—they would be pulled

into the roundhouse, and the parts would be sent up to Kingsland to be repaired right away and sent back."

He also testified with regard to "rush work" that it "would be generally on the ones [engines] going out of the state; the others they have got extra engines there to pull them out." He further testified that he "was the only man on this bench for this class of work." Among the machines upon which he worked was a shaping machine. "This machine is used for shaping keys and cotters and brasses for connecting rods." These keys and cotters were articles used to keep the piston rod in the crosshead of the locomotives.

The facts in immediate connection with the injury are stated in the prevailing opinion. It seems to me that, within the authorities, if plaintiff had been working upon the shaping machine and had been injured through a defect in it, he could be said to be engaged in interstate commerce. Pedersen v. Del., Lack. & West. R. R., supra; St. L. & San Francisco Ry. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129; Mondou v. New York, New Haven & Hartford Railroad Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Seaboard Air Line v. Moore, 228 U. S. 433, 33 Sup. Ct. 580, 57 L. Ed. 907; Nor. Car. R. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. ——; Law v. Illinois Cent. R. Co., 208 Fed. 869, 126 C. C. A. 27; Lamphere v. Oregon R. & Nav. Co., 196 Fed. 336, 116 C. C. A. 156; Darr v. Baltimore & O. R. Co. (D. C.) 197 Fed. 665, affirmed (C. C. A.) 204 Fed. 751; Northern Pac. Ry. Co. v. Maerkl, 198 Fed. 1, 117 C. C. A. 237; Thomson v. Columbia & P. S. R. Co. (D. C.) 205 Fed. 203; Eng v. Southern Pac. Co. (D. C.) 210 Fed. 92.

The fact that this machine was sometimes employed in aid of interstate commerce and sometimes in aid of intrastate commerce would make no difference, provided that the act in which plaintiff was engaged was a part of interstate commerce. Ill. Cent. R. R. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. ——.

In the Pedersen Case, supra, the plaintiff, acting under direction of his foreman, was carrying from a tool car to a bridge some bolts or rivets which were to be used in repairing the bridge; the repair consisting in taking out an existing girder and inserting a new one. This bridge was used both for interstate and intrastate commerce. It was held that plaintiff was engaged in interstate commerce.

In St. L. & San Francisco Ry. v. Seale, supra, which was a death case, deceased was employed by defendant as a yard clerk in its yard at North Sherman, and his principal duties were those of examining incoming and outgoing trains and making a record of the seals on car doors, checking the cars with the conductors' lists, and putting cards or labels on the cars to guide switching crews in breaking up incoming, and making up outgoing, trains. While so engaged, he was struck and fatally injured by a switch engine, which was being negligently operated by a fellow employé. It was held that plaintiff was engaged in interstate commerce.

Seaboard Air Line v. Moore, supra, was a case of a fireman of a switch engine which apparently never went out of defendant's yard at Tampa, who was injured by a defective footboard. It appeared that

lumber on freight cars was shipped to the terminal of the Tampa Northern Road at Tampa, and there unloaded and afterwards shipped by schooner to a point in New Jersey. It was held that he was engaged in interstate commerce.

In Nor. Car. R. R. Co. v. Zachary, supra, also a death case, the deceased was a fireman on engine No. 862, which ran entirely within the state of North Carolina from Selma to Spencer. He had prepared his engine for the trip, and was crossing the tracks in the railroad yard, when he was struck by engine No. 1551, a shifting engine used only in the yard, and was killed. It appeared that engine No. 862 was to haul two freight cars which had been brought in from Pinners Point, Va., and to carry them to Spencer, and that just before the accident he had been oiling his engine and preparing it for the trip. Although the cars had not yet been attached to the train, it was held that his employment in interstate commerce was not "in futuro," but that the acts of inspecting, oiling, and preparing his engine to haul these cars were acts performed as a part of interstate commerce. It was also claimed at the time of his death that he was injured while crossing the yard to go to his boarding house. The court said he had not gone beyond the limits of the yard, and that there was nothing to indicate that his visit to the boarding house was out of the ordinary, or inconsistent with his duty to his employer, and the court held that it was a question for the jury whether deceased, while so doing, was engaged in interstate commerce.

In Law v. Illinois Cent. R. Co., supra, a boiler maker was engaged in repairing an engine regularly used in interstate commerce, but which had been in the repair shop for 21 days. It was held that plaintiff was engaged in interstate commerce.

In Lamphere v. Oregon R. & Nav. Co., supra, an engineer was going to relieve another engineer who had been constantly on duty on an interstate train for a period of 16 hours. Although he had not yet reached the place of his employment, it was held that he was engaged in interstate commerce.

In Darr v. Baltimore & O. R. Co. (D. C.) 197 Fed. 665, an interstate train had reached the end of its run. Plaintiff, who was employed in making running repairs, was sent to replace a bolt which had been lost from a brake shoe of the tender, and while so employed was injured through the negligence of a fellow servant. It was held that he was engaged in interstate commerce, and this judgment was affirmed (C. C. A.) 204 Fed. 751.

In Northern Pac. Ry. Co. v. Maerkl, supra, plaintiff was employed in repair shops connected with an interstate track. He was injured while repairing a car used indiscriminately in interstate and intrastate commerce. It was held, for the purposes of the act, that he was engaged in interstate commerce.

In Eng v. Southern Pac. Co., supra, it appeared that defendant was engaged both in interstate and intrastate commerce. Plaintiff was injured while framing a new office in a freight shed, and in sawing boards and nailing them to the wall. It was held that he was engaged in interstate commerce, and the court said:

"The principle seems to be that one employed, at the time of his injury, in the use of or maintaining in proper condition any instrumentality or appliance used by the carrier in interstate commerce comes within the statute, although such instrumentality or appliance may also be used for intrastate business."

And it was held that a freight shed was used in interstate commerce.

Again, even if plaintiff in this case had not been operating the machine, but if he had been engaged in repairing it so that it could be used, I think the same principle would apply. On the contrary, if he had been engaged in the construction of a new machine which had not yet been employed in interstate commerce, probably he would not have been. As was said by the court in Law v. Illinois Cent. R. Co., supra:

"We have not here a case of original construction of an engine not yet become an instrumentality of interstate commerce. It had already been impressed with such use and with such character. Its preservation as such was not a matter of indifference to defendant, so far as its interstate commerce was concerned."

In the case at bar, the machine by previous use had become an instrumentality of interstate commerce. The mere change of its position was really of the character of a repair to it, or at least of an alteration in it to make it a more effective instrumentality.

In the Lamphere Case, supra, the court, speaking of the injury to plaintiff, said:

"What is its effect upon interstate commerce? Does it have the effect to hinder, delay, or interfere with such commerce? As applied to the present case, it is this: Was the relation of the employment of the deceased to interstate commerce such that the personal injury to him tended to delay or hinder the movement of a train engaged in interstate commerce?"

I have an impression that the last question does not entirely fairly state the test, because in the case of Ill. Cent. R. R. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. ——, it was said that the application of the act should be confined to cases where "the particular service in which the employé is engaged is a part of interstate commerce," and that is perhaps a more accurate test. But even this, it seems to me, here is fulfilled. As I have tried to point out, plaintiff was engaged in improving the condition of a machine engaged in interstate commerce. The effect of such improvement would be to facilitate the transaction of such commerce. Omitting to make such improvement would hinder, delay, and interfere with it. I think, therefore, that plaintiff was thus engaged. I am quite confident that the framers of the Constitution, when preparing the interstate commerce clause thereof, had not the remotest idea that this clause of the instrument was to be given the liberal construction that has been given to it. Such construction is very much like judicial legislation. Perhaps this would indicate to conservative thinkers that circumstances have arisen which necessitated a change in the language of that venerable instrument, and perhaps to progressive thinkers it might seem that the change could readily and properly be made by the courts without resorting to the slower method of constitutional amendment. If such construction does involve a change in that instrument, we may only say that the highest court in the land has directed it to be made, and judicial subordination requires that we should follow.