**HOOVER, Secretary of Commerce, v. INTERCITY RADIO CO., Inc.**

(Court of Appeals of District of Columbia. Decided February 5, 1923.)

No. 3766.

**1. Telegraphs and telephones ⬅30—Secretary of Commerce has no discretion to license radio stations.**

Act Aug. 13, 1912 (Comp. St. §§ 10100–10109), providing for the regulation and licensing of radio stations, which requires such stations to be licensed by the Secretary of Commerce, but itself prescribes regulations protecting distress signals and government business, and by section 2 (Comp. St. § 10101) provides that the license shall be subject to the regulations contained in the act and such regulations as may be established at any time by authority of the act or subsequent acts or treaties, manifests an intention that Congress should fully regulate the business, without leaving it to the discretion of the executive officer, especially in view of the statement by the chairman of the committee of commerce, when the bill was under consideration, that it was compulsory with the Secretary of Commerce to issue licenses on application.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Statutes ⬅225217—Committee report followed according to reasonable interpretation of act.**

While committee reports are not binding on the courts in interpreting statutes, they are indicative of the legislative intention, and will be followed when the statements so made accord with the reasonable interpretation to be drawn from the language of the act itself.

**3. Mandamus ⬅2271—Issues to compel performance of ministerial act.**

Though mandamus will not lie to control the action of an official of the executive department in the exercise of discretionary power, it will issue to compel the performance of a duty which is purely ministerial and involves the exercise of no discretion.

**4. Mandamus ⬅2287—Secretary of Commerce can be compelled to license radio station.**

The only discretion vested in the Secretary of Commerce with reference to licensing a radio station is the selection of a wave length within the limitations prescribed in the statute, which, in his judgment, will result in the least possible interference, and the issuance of a license will be compelled, where refused on the ground no wave length can be assigned to the station which will not interfere with other stations.

Appeal from the Supreme Court of the District of Columbia.

Mandamus by the Intercity Radio Company, Inc., against Herbert Hoover, Secretary of Commerce. From an order directing the issuance of the writ, defendant appeals. Affirmed.

Peyton Gordon, of Washington, D. C., for appellant.

Wade H. Ellis and Abner H. Ferguson, both of Washington, D. C., for appellee.

Before VAN ORSDEL, Associate Justice, and MARTIN and SMITH, Judges of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. This appeal is from an order of the Supreme Court of the District of Columbia, directing the issuance of a writ of mandamus requiring appellant, Secretary of Commerce, to issue to plaintiff company, a license to operate a radio station in the city of New York.

The plaintiff alleged that it has been engaged in the business of wireless telegraphy between New York and other cities of the United States since January 16, 1920, under licenses issued from time to time by defendant, pursuant to the Act of Congress approved August 13, 1912, 37 Stat. 302 (Comp. St. § 10100–10109). It was further alleged that the last license expired on November 12, 1921; that defendant refused to grant plaintiff a new license for the operation of its station; that appellee, in all respects, complied with the requirements of the act of Congress and of the regulations contained therein; and that the duty imposed upon defendant of granting licenses is purely a ministerial one.

Defendant answered, admitting the refusal of the license, but defending on the ground that he had been unable to ascertain a wave length for use by plaintiff, which would not interfere with government and private stations, and that under the provisions of the act of Congress the issuance or refusal of a license is a matter wholly within his discretion.

[1] Section 1 of the act (Comp. St. § 10100) forbids the operation of radio apparatus, where interferences would be caused with receipt of messages or signals from beyond the jurisdiction of the state or territory in which it is situated, "except under and in accordance with a license, revocable for cause, in that behalf granted by the Secretary of Commerce and Labor upon application therefor." The license shall be in form prescribed by the Secretary, containing the restrictions pursuant to the act "on and subject to which the license is granted." Section 2 (Comp. St. § 10101). The license also "shall state the wave length or the wave lengths authorized for use by the station for the prevention of interference and the hours for which the station is licensed for work." The license is further made subject to the regulations of the act and such regulations as may be made by the authority of the act.

The Secretary of Commerce is given authority, for the purpose of preventing or minimizing interference with communication between stations, to enforce the regulations established by the act through the collectors of customs and other officers of the government, with power, however, in his discretion, to waive the provisions of the regulations when no interference obtains.

The act further provides as follows:

"All stations are required to give absolute priority to signals and radiograms relating to ships in distress; to cease all sending on hearing a distress signal; and, except when engaged in answering or aiding the ship in distress, to refrain from sending until all signals and radiograms relating thereto are completed." Section 4 (Comp. St. § 10103).

Private or commercial shore stations, so situated that their operation interferes with naval and military stations, are forbidden to "use their transmitters during the first fifteen minutes of each hour, local standard time," during which time the military and naval stations shall transmit signals or radiograms, "except in case of signals or radiograms relating to vessels in distress." The Secretary is forbidden to license private or commercial stations to adopt a waive length between 600 meters and 1,600 meters, the wave lengths between these figures being reserved for governmental agencies. Penalties are prescribed for violations of the act.

Congress seems to have legislated on the subject of radio telegraphy with reference to the undeveloped state of the art. Interference in operation is conceded; hence the act undertakes to prescribe regulations by which the interference may be minimized rather than prevented. It regulates the preferences to be accorded distress signals and government business. It specifically subjects private and commercial stations to the regulations prescribed by the act, the enforcement of which is imposed upon the Secretary of Commerce, acting "through the collectors of customs and other officers of the government." Indeed, the impossibility of totally eliminating interference was recognized internationally by the London Convention which resulted in the Treaty of July 8, 1913 (38 Stat. 1672).

Complete control of the whole subject was reserved by Congress in the provision of section 2 (Comp. St. § 10101) that "such license shall be subject to the regulations contained herein, and such regulations

as may be established from time to time by authority of this act or subsequent acts or treaties of the United States," and the further provision that "such license shall provide that the President of the United States in time of war or public peril or disaster may cause the closing of any station for radio communication and the removal therefrom of all radio apparatus, or may authorize the use or control of any such station or apparatus by any department of the government, upon just compensation to the owners."

We are in accord with the construction placed upon the act by the Attorney General on October 24, 1912 (29 Op. Atty. Gen. 579), in response to an inquiry from the Secretary of Commerce and Labor, as follows:

"The language of the act, the nature of the subject-matter regulated, as well as the general scope of the statute, negative the idea that Congress intended to repose any such discretion in you in the matter of licenses. It is apparent from the act as a whole that Congress determined thereby to put the subject of radio communication under federal supervision, so far as it was interstate or foreign in its nature. It is also apparent therefrom that that supervision and control is taken by Congress upon itself, and that the Secretary of Commerce and Labor is only authorized to deal with the matter as provided in the act, and is given no general regulative power in respect thereto. The act prescribes the conditions under which the licensees shall operate, containing a set of regulations, with penalties for their violation."

That Congress intended to fully regulate the business of radio telegraphy, without leaving it to the discretion of an executive officer, is apparent from the report of the House committee in recommending the passage of the bill to the House of Representatives, as follows:

"The first section of the bill defines its scope within the commerce clause of the Constitution, and requires all wireless stations, ship and shore, public and private, to be licensed by the Secretary of Commerce and Labor. This section does not give the head of that department discretionary power over the issue of licenses, but in fact provides for an enumeration of the wireless stations of the United States and on vessels under the American flag. The license system proposed is substantially the same as that in use for the documenting upward of 25,000 merchant vessels."

It was further stated by the chairman of the committee on commerce in the Senate, when the bill was under consideration, that "it is compulsory with the Secretary of Commerce and Labor that upon application these licenses shall be issued."

[2] While committee reports are not binding upon the courts in interpreting statutes, they are indicative of the legislative intention, and will be followed when the statements so made accord with the reasonable interpretation to be drawn from the language of the act itself.

[3] We are not unmindful of the strict rule forbidding interference with the exercise of official discretion by the extraordinary processes of the courts. The rule that mandamus will not lie to control the action of an official of the executive department, in the exercise of discretionary power, is too well settled to require discussion. But where the duty imposed is purely ministerial, and there is no discretion reposed in the officer, the courts will not hesitate to require the performance of the duty as prescribed.

[4] In the present case the duty of naming a wave length is mandatory upon the Secretary. The only discretionary act is in selecting a wave length, within the limitations prescribed in the statute, which, in his judgment, will result in the least possible interference. The issuing of a license is not dependent upon the fixing of a wave length. It is a restriction entering into the license. The wave length named by the Secretary merely measures the extent of the privilege granted to the licensee.

It logically follows that the duty of issuing licenses to persons or corporations coming within the classification designated in the act reposes no discretion whatever in the Secretary of Commerce. The duty is mandatory; hence the courts will not hesitate to require its performance.

The judgment is affirmed, with costs.

Motion for allowance of writ of error to remove cause to United States Supreme Court, and to recall and stay mandate, granted March 5, 1923.