[S. F. No. 16641. In Bank. Jan. 12, 1942.]

SOUTHERN PACIFIC COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and FRANK MISTRETTI, Respondents.

Henley C. Booth and Burton Mason for Petitioner.

Everett A. Corten for Respondents.

Irvin C. Ford and Lawrence G. Dorety, as Amici Curiae, on behalf of Respondents.

THE COURT.—This cause was taken over after decision by the District Court of Appeal, First Appellate District, Division Two. We adopt the opinion of Mr. Justice Sturtevant as the opinion of this court. It reads:

"This in an application for a writ of review for the purpose of having annulled an award made on July 27, 1940, by the Industrial Accident Commission. The first finding on which said award was based was as follows: 'Frank Mistretti, applicant, while employed as a car builder on November 8, 1939, at South San Francisco, California, by Southern Pacific Company, sustained injury arising out of and occurring in the course of his employment, as follows: He sustained injury to his left eye, subsequently requiring enucleation thereof. At said time the employer was permissibly self-insured for liability under the Workmen's Compensation Laws of the State of California, to which said laws both employer and employee were then and there subject.'

"Said award was made and based on the following facts.

"1. Petitioner is a common carrier by railroad in interstate commerce in the respects hereinbefore more fully alleged. That part of its railroad system extending between

San Francisco and Santa Barbara, California, is known as the 'Coast Division.' At Bayshore, a point on said Coast Division near San Francisco, petitioner maintained (as a part of said Coast Division) for exclusive railroad use its repair shops, where cars used in and already devoted to general freight service, as well as cars used in and already devoted to its railroad maintenance purposes, were repaired. New cars were not constructed at said shops. The repairs performed were of both the running-repair type, the light-repair type, and also of the heavy-repair type. The purpose of repairing freight cars is to permit their continued use by petitioner and its railroad connections in their general freight business as common carriers by railroad, including the movement of property in both interstate and intrastate commerce.

"2. Applicant was employed by petitioner as a car-repairman at its said Bayshore shops, and his duties as such called on him to make repairs to the wooden portion of freight cars undergoing repair therein. Part of applicant's duties also included repairing the wooden portion of cars used by petitioner in the clearance, repair and maintenance of its tracks used as highways of interstate commerce and transportation.

"3. The applicant was, at the time of the accident, engaged in making repairs to a special type of maintenance car, designed for and used as a part of a relief outfit known as the 'Watsonville Junction Relief Outfit.' That car was of the type known as a 'combination truck and boom car,' and was numbered 'SPMW-7019E,' 'SPMW' denoting 'Southern Pacific Maintenance of Way.' This car had been in use in that outfit prior to the accident, and at the time of the accident was undergoing necessary repairs, for the purpose of and with the intention of restoring it to the said outfit, so that it might be continued as a unit therein and used as such. Following the accident repairs were completed, and the car returned to said relief outfit and to use as a unit in said outfit. Said relief outfit was and is used to remove obstacles from the tracks, e.g., derailed cars or engines, wrecked cars or engines, and other obstructions, all of which impede, render unsafe and prevent the flow of traffic, and thus interfere with the movement of passengers and property in interstate as well as intrastate commerce.

"4. The said combination truck and boom car was sent

on October 29, 1939, from Watsonville Junction on said Coast Division to the Bayshore shops, a distance of about one hundred miles from Watsonville Junction. It arrived at Bayshore on October 30, 1939, and the repair work thereon was commenced immediately by a shop crew which included applicant. That crew first stripped the superstructure of the car, leaving the trucks and the steel body frame, and then rebuilt the superstructure, completing the work of repair on November 16, 1939. On that day the car was returned to Watsonville Junction, arriving there November 17, 1939, and resuming active service with the said Watsonville Junction relief outfit on November 19, 1939.

"From the date of its arrival at the shops, to the day repairs were completed and it was billed back to Watsonville Junction, the car remained on a track in the shops while the repairs were being performed, and while it was being repaired a substitute but not identical car temporarily took its place in said relief outfit.

"5. On November 8, 1939, while applicant was engaged in the course of his said employment upon said car (SPMW-7019E) at said shops, and while he and a fellow employee were engaged in removing a hinge from a door of said car, a flying piece of metal struck the applicant's left eye. Said injury resulted in the loss of the left eye, the applicant returning to work for petitioner in his usual occupation December 11, 1939, after having been fitted with an artificial eye.

"In its brief the petitioner pointedly narrows the issue and states its contention as follows: 'We emphasize, at the outset of this petition, that no question is here raised as to whether the injury arose out of or occurred in the course of the employment; nor is there any question as to the amount of the award, if any award at all may lawfully be made by the respondent commission. Indeed it may be conceded, at least for purposes of argument, that if an accident similar in all respects to the one here involved had occurred prior to August 11, 1939, the Federal Employers' Liability Act as it then read would not have been applicable; and the sole remedy of the applicant would have been under the state workmen's compensation laws.'

"Having clearly stated the issue the petitioner proceeds to argue that the amendments of 1939 to the Federal

Employers' Liability Act are so worded as to cover the instant case. (Compare 35 U. S. Stats. at L. 65, and 53 U. S. Stats. at L. 1404 [45 U. S. C. A. Supp., sec. 51].) The respondent commission contends the facts in the instant case do not bring it within either of said federal statutes but that said case is governed by the provisions of sections 3201-6002 of the Labor Code of this state. In other words the petitioner claims the remedy of Mistretti was that provided by the federal statutes and the respondent commission contends his remedy was under the state statute.

"The amendment added in 1939 to section 1 of the original act (35 U. S. Stats. at L. 65) is as follows: 'Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act and of an Act entitled "An Act relating to the liability of common carriers by railroad to their employees in certain cases" (approved April 22, 1908), as the same has been or may hereafter be amended.' Its meaning is certainly not free from doubt. In *Railroad Commission* v. *Chicago B. & Q. R. Co.*, 257 U. S. 563 [42 Sup. Ct. 232, 66 L. Ed. 371], at page 589, Mr. Chief Justice Taft speaking for the court said: 'Committee reports and explanatory statements of members in charge, made in presenting a bill for passage, have been held to be a legitimate aid to the interpretation of a statute where its language is doubtful or obscure. *Duplex Printing Press Co.* v. *Deering*, 254 U. S. 443, 475, 65 L. Ed. [349] 354, 16 A. L. R. 196, 41 Sup. Ct. Rep. 172.'

"Before proceeding it will be best to state some historical facts regarding the development of the question that is here involved. Prior to the adoption of the amendments of 1939 (53 U. S. Stats. at L. 1404) the question was brought before the court by Bruce Shanks. While employed by the Delaware, Lackawanna and Western Railroad Company he was engaged as a machinist in removing a shaft-hanger in the defendant's machine shop. While so engaged a crane was negligently allowed to run over his hands. He brought an action to recover damages. The jury awarded him substantial damages. From the judgment the defendant appealed to The Second Depart-

ment of the Appellate Division of the Supreme Court of New York. (*Shanks* v. *Delaware, Lackawanna & West. R. R. Co.*, 163 App. Div. 565 [148 N. Y. Supp. 1034].) The case was well presented and the decision shows that the court carefully examined the authorities. By a divided court the judgment was reversed on the ground that the evidence did not show Shanks was engaged in interstate commerce at the time of the injury and the plaintiff was remanded to his remedy under the Workmen's Compensation Act of New Jersey, that being the state where the accident occurred. Shanks appealed to the Court of Appeals (214 N. Y. 413 [108 N. E. 644, Ann. Cas. 1916E, 467]). By a divided court the judgment of the appellate division was affirmed. Thereafter Shanks sued out a writ of error in the Supreme Court of the United States. That court affirmed the judgment of the court of appeals (*Shanks* v. *Delaware, Lack. & West. R. Co.*, 239 U. S. 556 [36 Sup. Ct. 188, 60 L. Ed. 436]). On page 558 the court stated: 'Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see *Swift & Co.* v. *United States,* 196 U. S. 375, 398 [25 Sup. Ct. 276, 49 L. Ed. 518]), and that the true test of employment in such commerce in the sense intended is, was the employee, at the time of the injury, engaged in interstate transportation or in work so closely related to it as to be practically a part of it? It then analyzed the decided cases. Having done so it concluded as follows: 'Coming to apply the test to the case in hand, it is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car or other instrument then in use in such transportation. What he was doing was altering the location of a fixture in a machine shop. The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation. This, we think, demonstrates that the work in which Shanks was engaged, like that of the coal miner in the Yurkonis Case, was too remote from interstate transportation to be practically a part of it, and therefore that he was not employed

in interstate commerce within the meaning of the Employers' Liability Act.'

"Returning to the amendments of 1939 (53 U. S. Stats. at L. 1404) they were embodied in Senate Bill 1708. When that bill was reported by the Committee on the Judiciary the report was printed (Report 661). It set forth the bill in full. It included the sections of the old statute (35 U. S. Stats. at L. 65) which were amended and the amendments were set forth in italics. The amendment to section 1 was as follows: 'Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act and of an Act entitled "An Act relating to the liability of common carriers by railroad to their employees in certain cases" (approved April 22, 1908), as the same has been or may hereafter be amended.' Continuing the report set forth:

" 'Objectives of the Bill

" 'It is the aim of the bill to amend the Employers' Liability Act in three particulars:

" '1. It broadens and clarifies the law in its application to employees who may be killed or injured while in the service of a railroad company engaged in interstate or foreign commerce . . .

" 'Amendment to Section 1

" 'This amendment is intended to broaden the scope of the Employers' Liability Act so as to include within its provisions employees of common carriers who, while ordinarily engaged in the transportation of interstate commerce, may be, at the time of injury, temporarily divorced therefrom and engaged in intrastate operations.

" 'The question whether an employee, at the time of his injury, is engaged in interstate or intrastate commerce is frequently difficult of determination. Under the rule laid down by the Supreme Court of the United States, an employee of a railroad company who may be injured must be found to have been engaged, at the time of the infliction of the injury, "in transportation or work so closely related to it as to be

practically a part of it" (*Shanks* v. *Delaware, L. & W. R. Co.*, 239 U. S. 556 [36 Sup. Ct. 188, 60 L. Ed. 436].)

" 'In order to prove interstate transportation, if the question is at all obscure, it is necessary to procure the records of the carrier to show that the train, or the car upon which the employee was working, at the time of the injury, contained some commodity, which was being transported in interstate commerce, or, if the car be empty, it is necessary to prove by the records of the company that the car was then en route in an interstate movement.

" 'As a result of the uncertainty which exists in borderline cases, there have been many instances in which suits were commenced and prosecuted to final determination only to develop the fact that the claimant had chosen the wrong remedy, or sued in the wrong court, and during the acquirement of this information the statute of limitations ran against the claimant under the law applicable to the case and no recovery could be had.

" 'Railroad men are frequently injured while moving or working upon cars or engines which have been temporarily withdrawn from interstate commerce and which were, just before or just after the injury, used in such commerce. In railroad switching service particularly men may be engaged in interstate and intrastate commerce intermittently several times during a single tour of duty.

" 'The adoption of the proposed amendment will, to a very large extent, eliminate the necessity of determining whether an employee, at the very instant of his injury or death, was actually engaged in the movement of interstate traffic. If any part of the employee's duties (at the time of his injury or death) directly, closely, or substantially affected interstate or foreign commerce, the claimant would be considered entitled to the benefits of the act.

" 'The preponderance of service performed by railroad transportation employees is in interstate commerce. As to those who are constantly shifting from one class of service to another, the adoption of the amendment will provide uniform treatment in the event of injury or death while so employed.'

"The statements made in that report accord with the reasonable interpretation of the paragraph added by the amendment to section 1. That being so they should be fol-

lowed by the courts. (59 C. J. 1021; *Hoover* v. *Intercity Radio Co.,* 286 Fed. 1003, 1006 [52 App. D. C. 339.) Counsel have been able to find but one case in which the interpretation of the amendment was involved. That case is *Ermin* v. *Pennsylvania R. Co.,* 36 Fed. Supp. 936. That case involved injuries to a brakeman. He was a member of a crew using engine No. 9912. They were engaged in moving both engines and cars which were, or had been, disabled to and from parking yards, repair shops, and the main lines. All such equipment had been, from time to time, engaged in both intra and interstate commerce and, after being repaired, would be so used thereafter. He was injured while so moving a dead engine with engine No. 9912. The court held he was directly, closely, and substantially furthering the transportation of interstate commerce within meaning of 53 United States Statutes at Large 1404. In construing that statute the court based its decision, in part, on the reports made by committees of the Congress.

██ "But, the respondent argues, if the statute is to be so construed then it is unconstitutional. In that connection the respondent does not specify any word or words but relies on the effect of the entire amendment as so construed. In other words the respondent contends the amendment as so construed covers, in part, intrastate business, a subject over which the Congress has no jurisdiction. The point is not well taken. If and when interstate business is clearly a part of the subject to be legislated on, the fact that intrastate commerce may be interwoven therewith does not prevent the Congress from exercising its powers. (*Baltimore & Ohio R. Co.* v. *Interstate Com. Comm.,* 221 U. S. 612, 618 [31 Sup. Ct. 621, 55 L. Ed. 878] ; *Southern Ry. Co.* v. *United States,* 222 U. S. 20, 26 [32 Sup. Ct. 2, 56 L. Ed. 72] ; *Texas & Pacific Ry. Co.* v. *Rigsby,* 241 U. S. 33, 42 [36 Sup. Ct. 482, 60 L. Ed. 874] ; *National L. R. Bd.* v. *Jones & Laughlin S. Corp.,* 301 U. S. 1, 37 [57 Sup. Ct. 615, 81 L. Ed. 893, 108 A. L. R. 1352].)

██ "Applying the principles to the facts in the instant case, it is settled law that the railroad tracks on which a company engaged in interstate commerce operates its trains are a part of interstate commerce. (*Pedersen* v. *Delaware, Lack. & West. R. R. Co.,* 229 U. S. 146, 151 [33 Sup. Ct. 648, 57 L. Ed. 1125].) It is also settled law that the matter of keeping

those tracks clear and safe for the transportation of commerce is also interstate commerce. (*Rader* v. *Baltimore & O. R. Co.*, 108 Fed. (2d) 980, 985.) A 'combination truck and boom car' has no other function than clearing tracks. One who is repairing such a car is clearly performing a duty which is '. . . the furtherance of interstate or foreign commerce . . .' Moreover his work does '. . . directly or closely and substantially, affect such commerce.' (53 U. S. Stats. at L. 1404.)

"In *New York Central R. R. Co.* v. *Winfield*, 244 U. S. 147 [37 Sup. Ct. 546, 61 L. Ed. 1045], it was decided, (quoting from the syllabus) : 'The liabilities and obligations of interstate railroad carriers to make compensation for personal injuries suffered by their employees while engaged in interstate commerce are regulated both inclusively and exclusively by the Federal Employers' Liability Act; and, Congress having thus fully covered the subject, no room exists for state regulation, even in respect of injuries occurring without fault, as to which the federal act provides no remedy.' Later in *Inter-Island Steam Nav. Co.* v. *Territory of Hawaii*, 96 Fed. (2d) 412, 418, Mr. Justice Haney, speaking for the court in the Ninth Circuit, said: 'The exclusive effect of congressional action is quite clear. Thus in the case last cited, it is said that "there can be no divided authority over interstate commerce." The states may not "complement" the act of Congress, or prescribe "additional regulations" or "auxiliary provisions for the same purpose" (citing cases), nor "supplement" such act.' ▉ *Amici curiae* have filed a brief in which they contend that the amendments of 1939 (53 U. S. Stats. at L. 1404) had the effect of making the Federal Employers' Liability Act non-exclusive, permissive, or optional. We have carefully read the brief. The arguments are, generally speaking, the same that were urged by Mr. Justice Brandeis regarding the scope of 35 United States Statutes at Large 65. (*New York Central R. R. Co.* v. *Winfield*, 244 U. S. 147, 154 [37 Sup. Ct. 546, 61 L. Ed. 1045].) That was a dissenting opinion. The majority of the court ruled the other way. It held the state statute was suspended. A most careful reading of the amendments of 1939 shows they do not speak on the subject. Manifestly if the contention was not applicable to 35 United States Statutes at Large 65, much less is it applicable to 53 United States Statutes at Large 1404. A most

casual reading of the amendatory statute discloses no intention on the part of the Congress to make such drastic changes.

"We conclude that, at the time of the accident, both the employer and the employee were engaged in interstate commerce and were subject to the provisions of the Federal Employers' Liability Act but that neither the employer nor the employee was subject to the Workmen's Compensation Laws of the State of California."

The award is annulled.