[Civ. No. 13812.  First Dist., Div. Two.  Nov. 17, 1948.]

SOUTHERN PACIFIC COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and JOSE P. BARRERA, Respondents.

A. G. Goodrich and F. E. Fuhrman for Petitioner.

T. Groezinger, John A. Rowe, Jr., Jno J. Taheny and Wm. J. Connolly for Respondents.

GOODELL, J.—Petitioner seeks a writ of review to annul an award of respondent commission.

Respondent Barrera was employed as a carman's helper in petitioner's Bay Shore shops near San Francisco. Petitioner has shops also at Sacramento, Los Angeles, Portland, Ogden, El Paso and Sparks, for the repair of its equipment used in the seven western states in which it operates.

Between 12 and 15 gondola cars were undergoing repairs in the Bay Shore shops from April 22 to 25, 1946, during which time Barrera worked on four or five of them, straighten-

ing with a sledge hammer the arms of the dump doors thereof. He sustained an injury on April 25 which admittedly arose out of and in the course of such employment.

The car foreman testified that these "open topped" cars were used "for the company's ballast to ballast yard tracks and mainline tracks" and that from time to time they were employed also in freight traffic, commercially, all over the system in the seven western states. He testified that after being repaired they returned to the same services, employed interchangeably and indiscriminately both in ballasting tracks and hauling freight, and that no records were available to show specifically the use to which any particular car was put before or after being repaired. The gondolas had been ordered to the shops in pursuance of a program for the installation of a new type of air brakes, but while there other repairs were made.

Petitioner's contention is that because of the work in which Barrera was engaged when injured and during the preceding three or four days, the case is within the purview of the Federal Employers' Liability Act [35 Stats. 65, 45 U.S.C.A., § 51 et seq.] and not of the Labor Code of this state; consequently that the commission in entertaining his claim and making its award acted in excess of its jurisdiction.

On August 11, 1939, the federal act was amended by the addition to section 51 of title 45 United States Code Annotated, of the following paragraph: "Any employee of a carrier, *any part* of whose duties as such employee shall be the furtherance of interstate or foreign commerce; *or* shall, *in any way* directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (Emphasis added.)

The Supreme Court had occasion to give careful consideration to the meaning and scope of this amendment in a group of five cases, namely, *Southern Pacific Co. v. Industrial Acc. Com.* (Mistretti case), 19 Cal.2d 271 [120 P.2d 880]; *Southern Pacific Co. v. Industrial Acc. Com.* (Rodgers case), 19 Cal.2d 281 [120 P.2d 887]; *Southern Pacific Co. v. Industrial Acc. Com.* (Wills case), 19 Cal.2d 283 [120 P.2d 888]; *Lewis v. Industrial Acc. Com.*, 19 Cal.2d 284 [120 P.2d 886], and *Copley v. Industrial Acc. Com.*, 19 Cal.2d 287 [120 P.2d 879] (cert. den. 316 U.S. 678 [62 S.Ct. 1108, 86 L.Ed. 1752]).

In the Mistretti case, 19 Cal.2d 271 at 279-280 [120 P.2d 880], the court says: ". . . it is settled law that the railroad

tracks on which a company engaged in interstate commerce operates its trains are a part of interstate commerce. (*Pedersen* v. *Delaware, Lack. & West. R. R. Co.*, 229 U.S. 146, 151 [33 S.Ct. 648, 57 L.Ed. 1125].) It is also settled law that the matter of keeping those tracks clear and safe for the transportation of commerce is also interstate commerce. (*Rader* v. *Baltimore & O. R. Co.*, 108 F.2d 980, 985.)''

Mistretti when injured (in the same Bay Shore shops) was repairing a ''combination truck and boom car,'' a unit of a maintenance of way relief outfit used for clearing the tracks of obstructions, which tracks carried both interstate and intrastate commerce. The court held that ''A 'combination truck and boom car' has no other function than clearing tracks. One who is repairing such a car is clearly performing a duty which is '. . . the furtherance of interstate or foreign commerce . . .' Moreover his work does '. . . directly or closely and substantially, affect such commerce.' (53 U. S. Stats. at L. 1404.)''

In the Rodgers case the employee was a switchman at petitioner's Los Angeles terminal, engaged in ''breaking up'' freight trains after their arrival and ''making up'' such trains prior to their departure, all of which trains were moving in both interstate and intrastate commerce.

In the Wills case the employee was engaged in petitioner's Sacramento shops in repairing a freight car used in both interstate and intrastate commerce.

In the Lewis case the switching crew of which Lewis was a member did not handle any cars destined for interstate commerce until after he was injured. The track on which he was working was admittedly a highway of interstate commerce. The court held that his ''duty as a member of the switching crew of an interstate railroad seems to us to affect interstate commerce directly or closely and substantially, even though at the moment of his injury he was not engaged in the movement of interstate traffic.'' It added that had the injury occurred prior to the 1939 amendment of the act it would not have been within its purview.

In the Copley case the employee was injured while working as a carpenter on a railroad trestle over which cars moved in both interstate and intrastate commerce.

In all five cases the federal act as amended was held to be applicable and exclusive. *Southern Pacific Co.* v. *Industrial Acc. Com. and Mistretti*, 19 Cal.2d 271, *supra*, is the key case of the series. It contains a comprehensive discussion of the

subject, including the legislative history of the amendment, and clearly holds (as does the Lewis case) that the 1939 amendment eliminated the so-called "moment of injury" test.

We find no distinction between the duties of an employee engaged, as in the Mistretti case, in repairing "a combination truck and boom car" used in clearing and making safe the tracks over which trains move in interstate and intrastate traffic, and the duties of one engaged in repairing gondola cars which haul ballast for stabilizing and making safe the roadbed on which such tracks are laid.

The instant case is unique in that gondolas perform dual functions. The interesting and unusual fact that in addition to their maintenance of way employment they are used as freight cars to haul gravel, sand and other materials for revenue, brings the case also within the rule of the Wills case, 19 Cal.2d 283, *supra*.

The report of the referee before the commission on the petition for rehearing states: "Neither the origin, nor the destination, nor even the identity of any of the gondola cars upon which the applicant worked was produced. There is no evidence that any of the four or five cars upon which he worked had been engaged in commerce interstate before they were bad-ordered, or that any of those cars were designated upon the completion of repairs for interstate service. Neither is there any evidence that any of these particular cars had been or were intended upon the completion of repairs to be used in connection with the construction or maintenance of any of the defendant's mainline road beds . . . There is thus a lack of evidence that the duties of the employer [employee?], or any part of them, were incident to interstate commerce."

This sums up the principal contention of the respondents and it comes close to being a statement of the law as it existed before the 1939 amendment when it speaks of the burden of showing where the cars had come from before the repairs and where they were destined afterward. It must be admitted that the testimony in the Mistretti case was more definite than that here, because there only a "special type of maintenance car" was involved while here there were a number of gondolas, all, apparently, of the same type, and the testimony of the foreman was general, to the effect that gondolas were used for the dual purposes already described. The legislative history quoted at 19 Cal.2d 278 contains the following from

the report of the Senate Judiciary Committee respecting the objectives of the proposed law:

"The adoption of the proposed amendment will, to a very large extent, eliminate the necessity of determining whether an employee, at the very instant of his injury or death, was actually engaged in the movement of interstate traffic. If any part of the employee's duties (at the time of his injury or death) directly, closely, or substantially affected interstate or foreign commerce, the claimant would be considered entitled to the benefits of the act.

"The preponderance of service performed by railroad transportation employees is in interstate commerce. As to those who are constantly shifting from one class of service to another, the adoption of the amendment will provide uniform treatment in the event of injury or death while so employed."

That the 1939 amendment was designed to do away with the "moment of injury" test is definitely held by the Mistretti and Lewis cases and is conceded. We are satisfied that the foreman's testimony as to the functions of gondola cars, while general, was sufficient to show that their repair was in "the furtherance of interstate . . . commerce" and that the referee's conclusion that there was "a lack of evidence that the duties of the employer [employee?], or any part of them, were incident to interstate commerce" was incorrect in view of such testimony. In *Shelton* v. *Thomson*, 148 F.2d 1, the employee operated a crane in a railroad storehouse, used to lift wheels and other supplies which were in turn used in the repair of freight cars some of which were used in intra- and others in interstate commerce. The court said at page 3, "The same crane which plaintiff operated, moved many articles. Some were used on cars which moved in interstate commerce. *No one in the employ knew where the car wheel would be used.* Perhaps the success of the repair efforts would determine its future use." (Emphasis added.) The court held that the employee's duties were in furtherance of interstate commerce. The judgment was reversed on other grounds. Here the employee worked directly, on the cars themselves, and when the foreman's testimony is compared with the facts in that case it is apparent that this is a much stronger case on the question of proximity. It would seem that Congress in discarding the "moment of injury" test determined to remove from the proof of these cases the requirement of tracing the movements of the equipment be-

fore and after the lay-up for repairs. The Senate report, *supra,* quoted in the Mistretti case, indicates this, and numerous decisions since the amendment so indicate. In the Wills case the court simply says: "The duties performed by Wills in the repair of cars *devoted to general freight service* were in furtherance of interstate commerce in a way which directly, or closely and substantially, affected that commerce." (Emphasis added.) These gondolas were, according to the testimony, in *general freight service.* We are satisfied that the foreman's uncontradicted testimony was sufficient to sustain the burden of proof (assuming that it rested on petitioner) and that it called for a finding that Barrera's duties were in furtherance of interstate commerce.

In the commission's brief it is said: ". . . according to the uncontradicted evidence at the time of injury and during the three days preceding, respondent Barrera had been working in the company's repair shop on cars not in service and which were undergoing major repairs and were receiving new equipment. Consequently at that time there was no element of interstate commerce involved." Again: "The only freight cars shown by the evidence to have been worked on by this man had been removed from all commerce and were in the repair shop . . ."

This is nothing but an argument that the temporary withdrawal of the cars from actual movement took them out of commerce. Such contention is answered by the Mistretti case, the rationale of which is that the very purpose of the repairs is to further the efficiency of the equipment in its service of interstate commerce. The same legal principles are held, at 19 Cal.2d 283, to be determinative of the Wills case. Such holding necessarily rules out any contention that the equipment takes on a static or local or intrastate character while thus laid up for repairs.

As the case is controlled by the Mistretti and Wills cases there is no need to discuss other authorities cited by the parties, many of which (including several involving "border line occupations"), are collected in Judge Yankwich's opinion in *Holl* v. *Southern Pacific Co.,* 71 F.Supp. 21, 24, 25. A further collection of authorities is found in 173 A.L.R. 794-797, while *Agostino* v. *Pennsylvania R. Co.,* 50 F.Supp. 726, cites a score of late ones (including the Mistretti and Lewis cases).

Respondents rely on the Holl case, *supra,* which holds that an employee who does clerical work in petitioner's claims department is not within the provisions of the 1939 amend-

ment. That case draws a line which of course had to be drawn somewhere (see dissent in the Pedersen case, *supra*, 229 U.S. at 153-155) but it bears no resemblance to this case.

Other cases cited by respondents which arose from injuries antedating the 1939 amendment are not in point because such amendment broadened and clarified the earlier enactment (see 19 Cal.2d 277) and eliminated the "moment of injury" rule and the necessity, under it, of showing the movements of the equipment to be in interstate commerce before and after it was "shopped" for repairs.

On the authority of the five cases in 19 Cal.2d cited earlier and particularly the Mistretti case (19 Cal.2d 271) and the Wills case (19 Cal.2d 283) we are satisfied that Barrera's injury is not within the jurisdiction of respondent commission under our Labor Code, but is within the purview and scope of the federal act.

The award is annulled.

Nourse, P. J., and Dooling, J., concurred.