ALLEN et al. v. RADIO CORPORATION OF AMERICA (RCA MFG. CO., Inc., Intervenor).

Civil Action No. 217.

District Court, D. Delaware.

Oct. 6, 1942.

H. Stanley Lynch, of Morris, Steel, Nichols & Arsht, of Wilmington, Del., and Harold Olsen, of Chicago, Ill., for plaintiffs.

Herbert L. Cohen, of Wilmington, Del., and Stephen H. Philbin and John B. Cuningham, both of New York City, for defendants.

LEAHY, District Judge.

This is a suit for infringement of certain claims of two patents covering radio vacuum tubes.[1] Plaintiffs filed motions to strike a defense from the answer and for further answers to interrogatories. Defendants then filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the ground that the four patent claims in suit are invalid. The motion is accompanied by the affidavit of a radio expert which states, in substance, that the inventions covered by the claims in suit were not disclosed in the Patent Office proceedings until twelve years after the original application was filed[2] and "three years after tubes, charged to infringe, had been placed on the market."

Plaintiffs filed no counter-affidavits. I gather from their brief, although they do not specifically so state, that they rely on the presence in the case of genuine issues of fact as the reason for denial of defendants' motion. However, in the light of plaintiffs' admissions arising from their failure to file counter-affidavits, I find there are no issues of fact remaining. Plaintiffs endeavor to raise one in their brief by arguing that the exhibits attached to the

---

[1] A full description of such tubes may be found in an opinion of this Court in Radio Corp. v. Collins, D.C., 13 F.Supp. 976.

[2] The original patent application on which all of the claims in suit are based was filed March 31, 1923.

246

affidavit of defendants' expert do not corroborate his statements that the alleged infringing tubes were offered for sale and publicly known in March of 1932, because they do not disclose sufficient of the structural features of the devices in issue for the court to determine whether they include the elements of the claims sued upon. Rule 56, it seems to me, does not contemplate the raising of an issue of fact for the first time in a brief of counsel. This Circuit indirectly touched on the point when it recently held in Black & Yates, Inc., et al. v. Mahogany Association, Inc., et al., 129 F.2d 227, 237, decided June 10, 1942: "Briefs are not part of the record."

■ In the absence of any genuine issues of fact, the court is authorized by Rule 56 to decide the case as a matter of law  Despite cases which state that questions involving the validity of patents should not ordinarily be determined without the benefit of expert testimony and the opportunity for full cross-examination,[3] I am unable to see why the granting or withholding of judgment under Rule 56 should depend upon different principles and call for the presence of different considerations in an infringement case than in other civil actions. The rule provides that the judgment sought shall be rendered on the pleadings, depositions, admissions, and affidavits, if there remains no genuine issue as to any material fact. There is no special rule for patent cases.

### I.  Claim 8 of Reissue Patent No. 21,240

This claim is identical with claim 8 of the original patent No. 2,010,463, which was issued on August 6, 1935, and surrendered on the same day upon application for the reissue patent, which was granted on April 9, 1940. Claim 8 reads: "8. A vacuum tube envelope housing a plurality of coil electrodes, each electrode having adjacent turns spaced from one another, said electrodes being inductively related to each other, and a dielectric member *having edges interposed between two of said electrodes, one of said edges being separated from said envelope.*" (Italics mine.)

The validity of this claim is attacked on two grounds:  (a) It is not disclosed in the description of the patent; and (b) it

was first submitted too late in the patent proceedings.

■ (a) *Disclosure.* The statute (35 U.S.C.A. § 33) specifically requires the inventor to file with the Patent Office a description of the patent "in such full, clear, concise, and exact terms as to enable any person skilled in the art or science * * * to make * * * the same." Accordingly, the specifications of a patent must disclose details of manufacture of the invention. There must not be "too much claim in the claims and too little specification in the specifications."[4]

As to at least two elements of this claim, I find no help in the descriptive part or specifications of the patent.

First, there is no disclosure of the "edges [of the dielectric member] interposed between two of said electrodes." Plaintiffs argue that this deficiency is imaginary inasmuch as it results from a misreading of the claim. They say it should be read as if there were commas before and after "having edges", so that the entire dielectric member—not just its edges—is interposed between two of the electrodes.

But supplying this punctuational defect—if such there be—is of no aid with respect to a second deficiency in the specifications; they are silent as to the separation of one of the edges from the envelope of the tube.

■■ As defendants point out, the description cannot even be derived from any of the nine drawings accompanying the patent. Both of the tubes shown respectively in Fig. 1 and Fig. 8 have dielectrics suspended in the center of the tube without apparent support and without touching the envelope at any point and, as plaintiffs' counsel stated, the clause in the claim, "one of said edges being separated from said envelope" means that the other touches it. Moreover, even if we assume the drawings do look to disclosure, a gap in the description of a patent cannot be supplied by drawings. As stated by Mr. Justice Brandeis in Permutit Company v. Graver Corporation, 284 U.S. 52, 60, 52 S.Ct. 53, 55, 76 L.Ed. 163: "Moreover, while drawings may be referred to for illustration and may be used as an aid in interpreting the specification or claim, they are of no avail where there is an entire absence of descrip-

[3] See e. g. Weil v. N. J. Richman Co., Inc., D.C., 34 F.Supp. 401; Van Wormer v. Champion Paper & Fibre Co., D.C., 28 F.Supp. 813.

[4] Zenitherm Co. v. Art Marble Co., 5 Cir., 56 F.2d 39, 43.

tion of the alleged invention, or a failure to claim it. The statute [35 U.S.C.A. § 33] requires the patentee not only to explain the principle of his apparatus and to describe it in such terms that any person skilled in the art to which it appertains may construct and use it after the expiration of the patent, but also to inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not."

■ These requirements are clearly not complied with by claim 8 of defendants' reissue patent.

■ (b) *Claim made too late.* An examination of the file wrapper discloses that claim 8 in its present form was first made in a petition for substitution of claims dated May 2, 1935, approximately twelve years after the original application was filed. According to the affidavit of defendants' expert—I assume his statements to be true for purposes of the present motion—this was three years after the tubes alleged to infringe had been placed on the market. The law as to late filing was recently stated in Muncie Gear Works v. Outboard, Marine & Mfg. Co., 315 U.S. 759, 62 S.Ct. 865, 869, 86 L.Ed. 1171. The Supreme Court there stated: "The claims in question are invalid if there was public use, or sale of the device which they are claimed to cover, more than two years before the first disclosure thereof to the Patent Office." [5] It was earlier stated in Chicago & N. W. Railway Co. v. Sayles, 97 U.S. 554, 563, 24 L.Ed. 1053, that: "Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the mean time, gone into public use." See, also, Judge Biggs' statement in National Hairdressers' & C. Ass'n v. Philad Co., D.C., 41 F.Supp. 701, at page 706.

■ Plaintiffs do not refute or attempt to distinguish the rule of law as stated, but rather argue that present claim 8 is essentially the same as claim 45 of the original application filed in 1923. That claim reads: "45. A vacuum tube, a spiral electrode therein, a dielectric element surrounding said electrode, a spiral grid surrounding said electrode and dielectric and a spiral electrode or plate surrounding all of the aforesaid elements within the tube."

Unlike claim 8 of the reissue, claim 45 requires that the parts "surround" each other and is limited to spiral electrodes, a specific form of coil, while claim 8 is for any kind of coil electrodes. Furthermore, claim 45 makes no mention of electrodes "having adjacent turns spaced from one another" and of the inductive relationship of the electrodes. Both of these are presumably integral features of present claim 8. Claim 45 is also silent about the "edges" feature heretofore discussed. Manifestly, then, these two claims are not the same.

Moreover, none of the claims of the original application treated the dielectric element as broadly as does claim 8 of the reissue. An examination of the original application discloses that, of the six claims dealing with a dielectric, four referred to "reflecting surfaces", and two stated that the dielectric gave off gases. Because of these limitations, the claims referred to were not the same as the unlimited present claim 8, which was first made in its broad form in 1935. To strike limitations from a claim is one means of broadening it.

I conclude the claim is invalid.

## II. Claims 6, 7 and 11 of Divisional Patent No. 2,043,517

On June 29, 1935 plaintiffs filed a divisional application to cover a certain device included in the original patent. We are interested in claims 6, 7 and 11, which read:

"6. A vacuum tube envelope housing an *elongated* coil electrode, other coil electrodes *surrounding* said first coil electrode and a mica insulating member *supporting* one of said electrodes."

"7. A vacuum tube housing a *heating* coil, electrodes *surrounding* said heating coil and a mica element for *supporting* one of said electrodes."

"11. A vacuum tube housing an *elongated heating* coil and a plurality of coil electrodes *surrounding* said first coil and concentric therewith." (Italics mine.)

Defendants attack claims 6 and 7 on the ground that they introduce an element—that of support by the dielectric—which was not disclosed until too late in the patent proceedings. Claims 7 and 11 are alleged to be invalid because the element of a

---

[5] The period is now one year. Act of August 5, 1939, 53 Stat. 1212, 35 U.S.C.A. § 31.

heating coil was also not claimed until too late.

The function of support by the mica insulating element, an integral part of claims 6 and 7, was not claimed in the original patent. The specifications in the original application and also in the original patent provide: "The mica disc F, shown in Fig. 3, may be constructed as a disc or washer, or it may be tubular in form (see Figure 8) or any other desired shape. This washer or disc may also be constructed of a thin layer of glass perforated with holes if desired to separate the · electrodes and like the mica disc prevent the electrodes from buckling and also acting as a support or frame work or may be arranged in tubular form, see Figure 8, to protect and separate the filament from the grid."

The original patent does not state that the mica insulating member supports any of the electrodes. In fact, no supporting function is mentioned. With the exception of the lead-in wires, there is obviously no support for any of the coils. The cylindrical insulating tube is apparently in a state of suspension. At one point, it is stated that the washer or disc is made of mica—at another, of a thin layer of glass with holes in it. The latter, it is said, may prevent the electrodes from buckling, and act as a frame-work or support. In turn, it may be replaced by a tubular form which will protect and separate the filament from the grid, but there is no statement that such substituted tubular form has a function of support.

■ I shall not discuss at length the history of the proceedings as disclosed by the file wrapper with respect to the various substitute specifications and claims made and rejected in the Patent Office. It is clear that the original patent fails to show how the dielectric could possibly form a support for any of the coils or, in fact, support itself. The failure to explain the feature of support invalidates any claim to such feature. Thompson v. Westinghouse Electric & Manufacturing Co., 2 Cir., 116 F.2d 422.

Moreover, it is doubtful whether the disclosure of the support feature in the divisional patent itself is sufficient. The only statement therein is: "The tubular coil 4 may be supported by the insulating tubular element 3 which may separate the coils or electrodes 2, 4 and 5 and prevent such electrodes from buckling. Such insulating member may act as a support or frame work for the electrodes." The statement fails to tell how the insulator may be used as a support or frame-work.

Claims 7 and 11 of the divisional patent speak of "an elongated heating coil" and a "heating coil." On the other hand the original application stated: " * * * there are practically three separate coils of wire which are inductively connected, the inner one G of which may be made to serve the purpose of a filament with or without being heated." After the Patent Office observed that this statement was "unintelligible" the applicant cancelled it. Indeed, it is difficult to understand how the inner coil as a filament could function without being heated as electrical current passed through it. Nevertheless, the filament in the original disclosure had an inductive function and heating had no importance, while in the present claims there is no inductive function but a heating function.

Plaintiffs argue, however, that the words "heated electrode" were in the original claim 7 and hence they justify the use of the words "heating coil" in the · present claims 7 and 11. But original claim 7 read: "A vacuum tube, a heated electrode and an elongated electrode in said tube and a non-conducting element which when heated liberates gases and influences the degree of vacuum." While present claim 7 reads: "A vacuum tube housing a heating coil, electrodes surrounding said heating coil and a mica element for supporting one of said electrodes."

A comparison of these claims demonstrates that they are different. In particular, it is to be noted that the "heated electrode" in original claim 7 speaks of an electrode which is heated, while the "heating coil" in present claim 7 covers any coil whether or not it acts as an electrode.

■ I conclude that Claims 6, 7 and 11 in the divisional patent No. 2,043,517, cover inventions different from those originally declared. Under the Muncie, Sayles and National Hairdressers' Association cases, supra, they must be held invalid. It is unnecessary, of course, to pass on the motion to strike answers to certain interrogatories or the motion to strike a defense from the answer.

Judgment for defendants should be entered in accordance with this opinion. Let an order be submitted.