21 So.2d 872

RAINWATER v. CHICAGO, R. I. & P. RY. CO.

No. 37602.

March 26, 1945.

W. T. Holloway, of Jonesboro, for plaintiff-appellant.

Barksdale & Barksdale, of Ruston, for defendant-appellee.

FOURNET, Justice.

We granted this writ of certiorari to review the judgment of the Court of Appeal for the Second Circuit reversing the judgment of the lower court awarding the plaintiff workmen's compensation under Act 20 of 1914 of the State of Louisiana, as amended, for an eye injury sustained during the course of his employment by the Chicago, Rock Island & Pacific Railway Company on the ground that at the time of his injury the plaintiff was employed in interstate commerce and as such within the exclusive purview of the Federal Employers' Liability Act, 35 U. S. Stats. at L. 65, as amended on August 11, 1939, 53 Stat. 1404, 45 U.S.C.A. § 51, because in its opinion the Court of Appeal declared the decisions of this court rendered prior to the adoption of the amendment of the act could have no application and declined to give

them any consideration. La.App., 21 So. 2d 428.

The case was submitted and tried on an agreed statement of fact wherein it was stipulated that the plaintiff, Oscar Rainwater, was, at the time of the injury, employed by the defendant, a railroad engaged in interstate commerce and serving several states, as a member of an extra gang of laborers who were hauling posts belonging to the defendant from a nearby wood and loading them on railroad cars preparatory to their shipment from Winnfield, Louisiana, to designated points along the defendant's system, there to be used in repairing the defendant's road bed. Of the six cars being loaded at the time of the accident, three were actually shipped to points within the state and three to points without, the exact destination of the car the plaintiff was working on when the accident occurred being unknown. It was further stipulated that if the plaintiff is entitled to recover under the workmen's compensation laws of this state, he is entitled to receive compensation at the rate of $14.35 a week for a period not to exceed 50 weeks; otherwise, that he is not entitled to recover at all.

We are advised by counsel for the defendant in their brief that the Federal Employers' Liability Act has never been construed by the Supreme Court of the United States since its amendment in 1939 and while we have not found any case in which that court does directly interpret the act as amended, we have found two of its very recent decisions that intimate the amendment has broadened the scope of the act in so far as employees are concerned. See Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. We have also found a number of decisions in which the federal district and circuit courts have held that this amendment broadens the scope of the act (Edwards v. Baltimore & O. R. Co., 7 Cir., 131 F.2d 366; Ermin v. Pennsylvania Railroad Co., D.C., 36 F. Supp. 936; Agostino v. Pennsylvania Railroad Co., D.C., 50 F.Supp. 726; Patsaw v. Kansas City Southern Ry. Co., D.C., 56 F. Supp. 897), as well as similar decisions in the appellate and supreme courts of various of the states (Southern Pac. Co. v. Industrial Accident Commission, 19 Cal.2d 271, 120 P.2d 880; Harris v. Missouri Pac. R. Co., 158 Kan. 679, 149 P.2d 342; Missouri Pac. R. Co. v. Fisher, 206 Ark. 705, 177 S. W.2d 725; Albright v. Pennsylvania R. Co., Md., 37 A.2d 870; Piggue v. Baldwin, 154 Kan. 708, 121 P.2d 183; Louisville & N. R. Co. v. Potts, 178 Tenn. 425, 158 S.W. 2d 729; Scarborough v. Pennsylvania R. Co., 154 Pa.Super. 129, 35 A.2d 603; Prader v. Pennsylvania R. Co., 113 Ind.App. 518, 49 N.E.2d 387; Great Northern R. Co. v. Industrial Comm., 245 Wis. 375, 14 N. W.2d 152; Taylor v. Lumaghi Coal Co., 352 Mo. 1212, 181 S.W.2d 536; Wright v. New York Central R. Co., 263 App.Div. 461, 33 N.Y.S.2d 531, affirmed 288 N.Y. 719, 43 N.E.2d 97) writs of certiorari to the United States Supreme Court having been refused in several instances. Albright v. Pennsylvania R. Co., supra, denied at 223

U.S. ——, 65 S.Ct. 72, 89 L.Ed. ——; Industrial Board of State of New York v. New York Central R. Co. supra, denied at 317 U.S. 668, 63 S.Ct. 73, 87 L.Ed. 537.

As was pointed out in the case of Prader v. Pennsylvania Railroad Company, 113 Ind.App. 518, 49 N.E.2d 387, 389, "Congress entered this field (of regulating the relations of common carriers engaged in interstate commerce and their employees) in 1906 when it enacted the first Employers' Liability Act, which, however, was subsequently declared unconstitutional because it attempted to regulate the liability of carriers in interstate commerce for any injury to any employee, even though his employment had no connection whatever with interstate commerce. The Employers' Liability Cases (Howard v. Illinois Cent. R. Co.), 1908, 207 U.S. 463, 28 S. Ct. 141, 52 L.Ed. 297. The second and present act became law in 1908, and until it was amended in 1939, 45 U.S.C.A. § 51 et seq., its scope was limited, by judicial interpretation, strictly to liability for injuries to employees who were actually engaged in interstate commerce when injured, *leaving redress under the state law open in the event the employee was injured otherwise.* * * * For cases within its scope, however, there was no remedy for the employee or liability on the part of the employer except as in said Act provided. * * * On August 11, 1939, Congress amended the Federal Employers' Liability Act of 1908." (Italics ours.)

As originally written, the Federal Employers' Liability Act declared that "Every common carrier by railroad while engaged in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia, * * * or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." To this the amendment of 1939 added the provision that "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." 45 U.S.C.A. § 51.

As reflected by the report of the Judiciary Committee on the Amendment, "This amendment is intended to broaden the

scope of the Employers' Liability Act so as to include within its provisions employees of common carriers who, while ordinarily engaged in the transportation of interstate commerce, may be, at the time of injury, temporarily divorced therefrom and engaged in intrastate operations. * * * The adoption of the proposed amendment will, to a very large extent, eliminate the necessity of determining whether an employee, at the very instant of his injury or death, was actually engaged in the movement of interstate traffic. If any part of the employee's duties at the time of his injury or death directly, closely, or substantially affected interstate or foreign commerce, the claimant would be considered entitled to the benefits of the act. The preponderance of service performed by railroad transportation employees is in interstate commerce. As to those who are constantly shifting from one class of service to another, the adoption of the amendment will provide uniform treatment in the event of injury or death while so employed." Committee Report No. 661 upon S. 1708, 76th Congress.

It is obvious, therefore, that while the purpose of this amendment may have been to eliminate the necessity of establishing that at the very moment of his injury the employee was actually engaged in the movement of interstate commerce when the employment is ordinarily so or when it constantly shifts between interstate and intrastate activities, its practical result has been to extend federal dominion over virtually the entire field since it includes therein the relations of the railroad corporations to *all* employees, any part of whose work is in the furtherance of interstate commerce or affects such commerce directly or closely and substantially. This broadening of the scope of the statute had the effect of adding to the number of employees coming within the exclusive purview of the federal statute rather than detracting therefrom. Consequently, employees that had been classified under our jurisprudence as engaged in interstate commerce prior to this amendment were not removed from such classification by its enactment and the authorities so classifying them have not been rendered valueless.

Prior to the adoption of this amendment it was generally held that an employee engaged in the repair of the instrumentalities of a railroad or common carrier used as highways of interstate commerce, such as its roadbeds, tracks, bridges, tunnels, and culverts, was engaged in interstate commerce within the meaning and contemplation of the federal statute. This was true even though these instrumentalities were also used in intrastate commerce and even though the line of the carrier was wholly within the limits of one state, provided such line connected with roads carrying interstate commerce. The jurisprudence of this state was in accordance with this general weight of authority. 35 Am.Jur. 865, Section 448, 10 A.L.R. 1191; 47 L.R.A.,N.S., 55; Vol. 2 of Roberts Federal Liabilities of Carriers 1475, Section 766, 2d Ed. In this jurisprudence we find cases holding that the following were engaged in interstate commerce: One carrying bolts and rivets to be used next day in repairing a

bridge (Pedersen v. Delaware, etc., R. R. Co., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas. 1914C, 153); one carrying blocks of wood to be used in jacking up a wrecked car so as to clear the track (Southern Railroad Co. v. Puckett, 244 U. S. 571, 37 S.Ct. 703, 61 L.Ed. 1321, Ann. Cas.1918B, 69); one shoveling snow from near the track (New York Cent. R. Co. v. Porter, 249 U.S. 168, 39 S.Ct. 188, 63 L. Ed. 536); one cooking meals for carpenters engaged in repairing a bridge (Philadelphia B. & W. R. Co. v. Smith, 250 U.S. 101, 39 S.Ct. 396, 63 L.Ed. 869); and, in our own jurisprudence, one carrying timbers about to be used in the repair of a siding in the yards of the railways company used for parking cars while trains were being made up. Hamilton v. Louisiana Ry. & Nav. Co., 162 La. 841, 111 So. 184.

In the Hamilton case, this court rejected the plaintiff's demand for compensation under the state laws, concluding that since the sidings (appurtenant to the trunk line and used in connection therewith in the operation of trains, including those engaged in interstate commerce) were instrumentalities of interstate commerce, the plaintiff, assisting in their repair, was engaged in interstate commerce.

█ . It is our opinion, therefore, that under this jurisprudence, irrespective of the amendment of 1939, the plaintiff in the instant case was employed in interstate commerce.

For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is affirmed.