**HYDRAULIC PRESS MFG. CO. v. E. W. BLISS CO. et al.**

No. 676.

District Court, W. D. New York.

July 16, 1945.

See, also, 2 F.R.D. 35.

Toulmin & Toulmin, of Dayton, Ohio, and John S. Powers, of Buffalo, N. Y., Solicitor for plaintiff.

Fraser, Myers & Manley, of New York City, and Bèan, Brooks, Buckley & Bean, of Buffalo, N. Y. (Stephen H. Philbin, of New York City, of counsel), for defendants.

KNIGHT, District Judge.

This is a suit for patent infringement. The defendants seek a summary judgment dismissing the Complaint as to each of eight claims. The patent in suit is the Ernst reissue Patent No. 19,694, and such claims relate to electrical apparatus for controlling a valve in a hydraulic press system, so that the ram and platen of the press will reciprocate to perform pressing operation on blanks, such as metal sheets. This was reissued September 10, 1935, upon original Ernst Patent No. 1,927,583, issued September 19, 1933. The application for the original patent was filed in the Patent Office September 15, 1930, and the application for the reissue patent was filed October 12, 1934. The motion relates to claims 5, 20, 27, 28, 31, 32, 34 and 36.

The grounds for dismissal, as alleged, are that "there is no genuine issue as to any material fact with respect to the alleged cause of action." Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The facts claimed are that all of the said claims, except claim 20, are invalid because they were not presented to the Patent Office until more than two years after the alleged inventions of the patent were on sale in this country. As to claim 20, it is claimed that it is not infringed by the defendants' stipulated structure. Reissue claims 5 and 20 are identical with claims 5 and 20 of the original patent No. 1,927,583, but the other claims hereinbefore mentioned are claims added to the reissue over the claims of the original patent.

The record before the court consists of defendants' motion, the complaint, plaintiff's bill of particulars, answer, stipulation of the Bliss alleged infringing structure, defendants' supporting and plaintiff's answering affidavits, and the Patent Office file wrapper, showing the original and reissue applications.

The object of the invention, as claimed, is "To provide a control means for hydraulic motors of the reciprocating double acting type including a single element which is adjustable to adapt the control means to effect either semi-automatic or completely automatic operation of the motor."

The reissue patent is distinguished from the Ernst prior Patent No. 1,927,583 in that the reissue provides for control means adapted for either semi-automatic or completely automatic operation without any interruption of operation, while in the prior patent there is a brief suspension of the operation of the press in performing the two operations.

Extensive affidavits, by one Cannon, as a patent expert, purporting to support the grounds for the motion for dismissal, and by one Ernst, as a patent expert, purporting to show that claim 20 is infringed and that the other claims in question were either not broader in scope than as originally filed and not broader than any other claim of the original and were not void as being filed within the critical period of two years, are submitted herein. It is admitted that plaintiff sold an apparatus embodying the invention of the patents in suit under date of February 13, 1930, and made delivery of it to a corporation in Illinois under date of May 14, 1930. Section 4886, Rev.Stat. 35 U.S.C.A. § 31, as amended and applicable here, provided that one condition for the issuance of a patent to an inventor was that

the invention was "not in public use or on sale in this country for more than two years prior to his (inventor's) application."

Claim 5 relates to holding means. Defendants allege that this claim as issued in the original patent was changed by amendment while the application was pending in the Patent Office and prior to the issuance of the patent more than two years after the sale and delivery of the apparatus as hereinbefore stated; that claim 5 as it stood in the original and as copied in the reissue patent was broader in scope than as originally filed and broader than any other claim of the original patent. As illustrative of this, defendants assert that claim 12 includes "a holding coil in said pilot circuit exterior of said branches", while claim 5 is not limited to a holding coil in a pilot circuit; that claim 12 includes "a pilot electric circuit including two parallel circuit branches and claim 5 does not recite any electric circuit and that claim 12 includes "a normally open switch adapted to be manually closed to close the pilot circuit," while 5 does not include such a switch. It is not claimed that claim 5 does not relate to the subject matter of the other claims or that the invention discloses in it anything which is not disclosed in the specifications and drawings of the original patent. The clause, "a holding means for retaining said switch in one of its positions," was added to the claim in the amendment filed May 12, 1933. It is the plaintiff's contention that these phases of the claim are not only wholly contained within the subject matter of claim 12 as filed in the original application, but that an amendment to a patent application, even though adding a broader claim, by covering an invention disclosed and shown in the original specifications and drawing, even though not claimed in the original application, is entitled to the date of the filing of the original application.

Claim 5 is the same as claim 6 in the original patent, but claim 6 was amended in the Patent Office. The plaintiff asserts that claim 6 (claim 5 as originally filed) was broader than the subject matter of claim 5 as allowed in the Ernst Patent No. 1,927,583, and that the last phase of the claim with reference to holding means was added to the claim by way of limitation in the amendment filed May 12, 1933. The plaintiff points out that the first six and one-half lines of claim 5 are identical with the first six and one-half lines of claim 12; that claim 12 includes "a main switch adapted to close an electric circuit through said flow controlling means to effect a reversal of fluid flow", and that claim 5 has this subject matter incorporated in this phrase "an electric switch adapted when closed to effect actuation of said flow controlling means", and that the phraseology in claim 5 that the claim includes "means associated with said switch and being responsive to a change in pressure in one of said chambers for operating said switch" is encompassed in the language in claim 12, "means associated with said last named switch and responsive to a change in pressure in said work chamber for opening said switch." It is to be noted that claim 5 includes "a holding means for retaining said switch in one of its positions", but claim 5 does not locate the "holding coil" as does claim 12 and does not recite any "pilot electric circuit including two parallel circuit branches" as does claim 12, but plaintiff says a pilot electric circuit and a holding coil in the pilot circuit adapted as described in 12 and a normally closed switch, as described in claim 12 are fully comprehended in the last clause of claim 5.

Claims 27, 28 and 31 relate to what is termed semi-automatic operation of the motor.

Claims 28 and 31 are substantially the same as claim 27. The earlier claims dealing with semi-automatic operation are 10 and 11, and claim 11 is similar to 10. So claims 10 and 27 are compared. The plaintiff asserts that the subject matter claimed in claims 27, 28 and 31 is fully contained in subject matter of claims 10 and 11. Defendants assert that earlier filed claim 10 claims a combination which includes both a "pump" and "switch means" manually operated; that the combination recited in claim 27 is narrower and different, because it does not either include a pump or a starter switch; and that earlier claim 10 in addition recites that the flow control means are "movable to three positions," while claim 27 is broader in that it says nothing as to whether the means are movable to different positions or the number of such positions. Earlier claim 10 reads: "electrical actuating means * * * adapted when active to move the latter (flow control means) to its first position." Claim 27 is also asserted to be broader because it does not specify any particular result in the activating of the "electrical actuating means."

Plaintiff asserts that the statement in all the claims 27, 28 and 31, "a hydraulic motor having reciprocal ram means and means forming a hydraulic circuit with the motor or for supplying fluid under pressure to the motor for operating the ram" and control means that effectuate a semi-automatic operation, and come within the subject matter of claim 10. Typical claim 27 does include "an electrically operated responsive means" to reverse the stroke of the ram, and claim 10, as originally filed in the Patent Office, includes means controlling the flow-controlling means and a switch means "to render the actuating means inactive", thereby providing a return stroke, but it may be doubted that this is sufficiently specific and clear. Claim 27 also includes means for bringing the stroke to rest at the end of a return stroke, while claim 10 speaks of these means as operable "to move said flow-controlling means to its third position." The third position is described as the position where the fluid flow is cut off and thereby the motor is stopped in the semi-automatic operation. In answer to the claim that it does not have "flow-controlling means in said circuit" or that the flow-controlling means of the pumps are "not movable to three positions", plaintiff says that a pump that can vary the delivery of the flow-control means regulating the positions of the pumping elements in the pump eccentrically to control delivery of the pump is within the pump and the hydraulic circuit. In other words, I take it, this means that the movements sufficiently include a pump. Claim 27 contains no reference to a "pump" as such. As to the three positions of the flow-control means, though claim 27 does say "of means forming a hydraulic circuit with said motor for operating said ram means in both directions and control means associated with said circuit", the claim again, as I understand it, is that "means" and "control means" as set out in claim 27 show flow-control means "movable to three positions."

The subject matter of claim 36 is the same as that of claim 34, except that claim 36 is more specific relative to the responsive means recited as being electrically operated. Plaintiff asserts that the subject matter in claims 34 and 36 is contained in earlier claims 7, 8, 9, 15, 16 and 17 as filed in the patent application. The subject matter of earlier claim 7 is the same as claims 8, 9, 15, 16 and 17, and hence the comparison is made between late claim 34 and earlier claim 7. Claim 7 includes a pump, while claim 34 does not include a pump. Earlier claim 7 recites that the flow-control means are "movable to two positions", while claim 34 says nothing as to the number of positions to which the flow-control means could be moved. Again, earlier claim 7 recites that "electrical-actuating means * * *" are "adapted, when active, to move the latter (flow-controlling means) to its first position." Claim 34 does not specify any particular result of activating the electrical actuating means, which electrical actuating means, when active, moves the flow-controlling means to its first position, and when inactive causes the ram to move through a return stroke. It is urged by the defendants that this claim 34 is broader in the respects stated than claim 7. As to these plaintiff claims that while not specifically stating them, typical claim 34 contemplates in its language, together with the drawings and specifications, "a pump", flow-control means "movable to two positions" and that it is sufficiently specific as to any particular result of activating the electrical actuating means.

Claim 32 is directed to pressure reversal, without including means for reversing the ram in response to the latter's movement or position, or for stopping the ram at the end of its return stroke, or for reversing the ram at the end of its return stroke.

It is claimed by the plaintiff that claim 32 is wholly contained in claim 5 as originally filed in the patent application, because claim 5 is directed to a combination substantially the same. It is also asserted by the plaintiff that the subject matter of claim 32, or parts thereof, may be found in other claims 6, 12, 13 and 14. So comparison is made by both parties between earlier claim 5 and late claim 32. Defendants urge that claim 32 is broader than earlier claim 5 because it defines a combination including flow-controlling means which need not necessarily be in the hydraulic circuit nor reverse the direction of the flow therein, and defendants urge that an apparatus having no flow-controlling means, or having such means which do not reverse the direction of the fluid flow, could infringe claim 32, but would not infringe earlier claim 5.

All of the claims 5, 27, 28, 31, 32, 34 and 36 of the reissue patent were filed more than two years after the date of the stipulated public use or sale. All, except 5, are found in the reissue patent only and defendants assert that each is broader in

480

scope than any other claim of the original patent No. 1,927,583. Plaintiff says all these claims are directed to the same subject matter that was disclosed and claimed in the original application; that the filing of the application for the reissue patent was within two years from the date of the issuance of the original patent and, therefore, this critical period has not run, and further the claims could then lawfully be broadened.

Claim 20 is claimed by plaintiff to be infringed by the Bliss stipulated structure. It is the contention of plaintiff that claim 20 has a selective means for reversing the movement of the platen of the hydraulic press, etc., in response to pressure applied to the ram of the press or in response to the position of the platen of the press as called for in the claim. The pertinent clause in the claim is "means for selectively rendering either one of said switch-operating means effective." The specific means provided in the Ernst patent for selectively rendering either one of the switch-operating means effective is the so-called "manual selective switch." The Ernst patent states as an object of the invention: "control means including a single element which is selectively adjustable to adapt said means for automatically reversing the travel of the work element at the end of a working stroke either upon the attainment of a predetermined pressure in the work cylinder, or upon the movable work element's reaching a predetermined position." In the Patent Office, Ernst referring to claim 20 said: "The applicant has provided a distinctly novel improvement by means of which the control of the press may be adapted for various working conditions by the mere shifting of an electrical switch * * *. The selector switch specified in claims 20 to 24 definitely ties together the means for carrying out the different kinds of control." Bliss employs a spring adjustable to determine at what amount of pressure the reversal would occur, and Bliss also shows a collar adjustable to determine the position of the platen at which reversal will occur. The defendants claim the Ernst structure has no element or switch constituting "means for selectively rendering either one of said switch-operating means effective." The issue involved with regard to claim 20 is whether defendants' independent adjustment of the collar on the position control rod and the pressure cylinder constitute means for selectively rendering either

one of said switch-operating "means" effective. Ernst discloses a manual switch, while Bliss provides for independent adjustment of the collar on the position control rod and of the pressure cylinder. Both Ernst and Bliss have the same pressure cylinder and collar adjustment in two different circuits, but Bliss' circuits are interdependent and co-acting circuits, while Ernst shows two circuits wholly independent and the operator changes from one circuit to the other by means of the selective switch.

Questions to be considered are these:

(1) Are the claims in suit, save claim 20, the same or substantially the same as claims presented in the application for the original patent? A determination that they are would require a dismissal of the motion as to such claims.

(2) If it were determined that the claims in suit, save claim 20, were not the same or substantially the same as claims presented in the application for the original patent, can they be sustained, if the subject matter of such claims is shown in the drawing and specifications of the application for the original patent?

(3) Is claim 20 infringed?

 It is claimed by the defendants that the claims in suit (save claim 20) are claims for a new and different invention from the old claims, and are broader in scope than any of the claims of the original invention, while the plaintiff, admitting that they are different from the invention covered by the claims in the original application as to the scope of the invention, asserts that these claims are "not for a new and different invention over the description and disclosures of the original application." It is admitted by the defendants that the subject matter of these reissue claims was in the original application as filed. Assuming that these reissue claims were broader than any claims in the application for the original patent and were for a "new and different invention", a determination then must be made as to whether the two years' limitation period had run as against the claims. The plaintiff claims that the filing date of these reissue claims dates back to the time of the filing of the application for the original patent and obviously this would be within the limitation period. The defendants' assertion is that the actual filing date of these reissue claims is the date determinative of whether the statute had run, and obviously this was more than two years after the

public sale of the device shown in the original patent. This likewise presents a question of law. "The claims in question are invalid if there were public use, or sale of the device which they are claimed to cover, more than two years before the first disclosure thereof to the Patent Office." Muncie Gear Co. v. Outboard Marine & Mfg. Co., 315 U.S. 759, 62 S.Ct. 865, 869, 86 L. Ed. 1171. "Disclosure" means to make known. Does that mean "disclosure" of the claims together with the drawings and specifications on which they are based? Does it mean disclosure of the claims alone? Is it a sufficient disclosure to the Patent Office, in so far as later claims are concerned, if the subject matter of the later claims is disclosed to the Patent Office by the drawings and specifications, but not claimed? These questions present questions of law. The answer to these questions in so far as this motion is concerned, it seems to me, depends on the question of whether these reissue claims are broader and are for a new invention, and that presents a question of fact.

The contentions and the conclusions of the parties with respect to the questions in issue have been presented herein in quite considerable detail. One particular reason for this was to demonstrate that the claims in question relate to a complicated combination device and to the operation thereof. While we may incline to an opinion as to the merits of the respective positions taken, it is not believed that this is sufficiently sustained to meet the rule of determination on this motion. It is believed the court should have the benefit of some clear demonstration of the construction and operation of the device in question and that the experts be offered for examination and cross-examination before the court and opportunity to furnish any additional proofs should be given. The rule this court follows here is that which has been laid down in many cases. This rule in effect is that claims should not be stricken down unless the proof is such as leaves the mind of the court free from doubt. The language of the Supreme Court in Schneiderman v. United States, 320 U. S.

118, 63 S.Ct. 1333, 1345, 87 L.Ed. 1796, that the proof must be "clear, unequivocal and convincing" may well be applied here. In Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 135, the Circuit Court in this Circuit said: "We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts." See: Weil v. N. J. Richman Co., D.C., 34 F.Supp. 401; Clair v. Sears, Roebuck Co., D.C., 34 F. Supp. 559; E. W. Bliss Co. v. Cold Metal Process Co., D.C., 47 F.Supp. 897.

There is this further to be said with reference to infringement of claim 20. While validity is not questioned on this motion, an issue of validity is made by the pleadings. Presumably some proof of prior art would be submitted upon the trial of the issue of validity. In Sinclair & Carroll Co., Inc. v. Interchemical Corporation, 325 U.S. 327, 65 S.Ct. 1143, 1145, it was said: "There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. * * * It has come to be recognized, however, that of the two questions, validity has the greater public importance, * * * and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent."

The parties have briefed extensively the question of the application of the two year statute of limitations. They differ widely in their construction of recent decisions of the courts, particularly Muncie Gear Co. v. Outboard, supra; Allen v. Radio Corporation of America, D.C., 47 F.Supp. 244; Engineering Development Lab. Inc. v. Radio Corporation of America, D.C., 62 F. Supp. 464. It is not necessary that these cases be construed here, but their application should be considered upon the trial of the issues of fact.

The defendants' motions to dismiss must be denied.