**DILLARD v. THOMPSON et al.**
**Civil Action No. 1516.**

District Court, W. D. Louisiana, Alexandria Division.

Nov. 12, 1945.

Leo Gold, of Alexandria, and Dimick & Hamilton, of Shreveport, La., for plaintiff.

Frank H. Peterman, of Alexandria, La., for Texas & Pacific Ry. Co.

Hudson, Potts, Bernstein &, Snellings, of Monroe, La., for Missouri Pacific R. Co.

PORTERIE, District Judge.

We have before us the motion for a summary judgment by the defendants under Federal Rules of Civil Procedure, Rule 56 (c), 28 U.S.C.A. following section 723c.

The facts are that the plaintiff, after having been settled under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., in June, 1944, receiving the sum of $2500, has filed a complaint alleging that his case falls under the state compensation law, and that an unlawful lump sum settlement has been made; that he is now entitled under the Louisiana statute, Act No. 20 of 1914, as amended to $20 per week for 400 weeks, or $8000, plus one-half of that amount, making $12,000, plus medical and other expenses, subject to a credit of the $2500 already paid him, leaving a claim of $10,000.

The facts are gleaned from two sources, (a) the petition of the plaintiff, and (b) the affidavits attached to the motion of defendant; the plaintiff (adverse party) has not served the opposing affidavits, and at oral argument was satisfied with the truthfulness of defendants' affidavits.

Plaintiff says his duties were: "those of a yard worker servicing switch tracks in the railroad yard" of the joint terminal of defendant railroads at Alexandria; that at the time of his injury he was "servicing or 'dressing' tracks"; that at the actual time of his injury "he was working on a yard switch track four or five tracks removed from the main line track, installing new cross-ties or 'dressing' said track"; that "the said track upon which petitioner was working on the date and at the time of said accident was a vacant, or dead, or 'condemned' track, the same having been closed to traffic in order to permit said repair and reconstruction work to be done, and no locomotives or cars or any traffic whatever was allowed upon said track, or the section thereof upon which petitioner was working;" that "the said track had been so closed to traffic for several days prior to the date aforesaid"; plaintiff further alleges "that said track * * * was used for storage purposes, empty freight cars and passenger cars not in use being parked there for considerable periods".

The other facts are contained in the two affidavits attached to the motion, one being subscribed by the section foreman of one of the defendants, who has worked thirty-five years for it, and the other affidavit being subscribed by the assistant superintendent of one of the defendants, he being in charge of the joint terminals of both defendants, and having been employed by one of the defendants for more than thirty years.

Since these facts, in the absence of counter-affidavits, should be accepted as true (Seward v. Nissen, D.C., 2 F.R.D. 545; cf. Allen v. Radio Corp. of America, D.C., 47 F.Supp. 244; Geller v. Transamerica Corp., D.C., 53 F.Supp. 625), and to serve in case of review, we shall quote the full affidavit of the section foreman:

"* * * that he was in the employ of said Railroad Company on April 25, 1944, at the time Dave Dillard was injured; that the said Dave Dillard was then a laborer working with the Extra Gang of which your affiant was Foreman; that they were working on what is known as Track No. 9 in the Alexandria Yards on the outskirts of the City of Alexandria, Louisiana; that the said Dillard left his work for a short period of time to answer a call of nature and was returning to work with the section gang when he crossed Track No. 11 and went in between two cars that were standing there, one being NYC car 182531 and the other WAB car 82014; that there were about

five cars on Track 11 at the time and they had been there all day to the best of affiant's recollections; that some tank cars were kicked down Track No. 11 while Dave Dillard was between the two cars mentioned and someone hollered to him and he jumped and turned around and got his body clear of the draw-bars but failed to clear his left arm which was caught between the two draw-bars and mashed.

"Affiant further deposes and says that Track No. 9 on which Dillard and other members of the crew were working on April 25, 1944, is one of the tracks making up the terminal yards at Alexandria; that affiant's duties require him to keep the tracks of said Company in repair; that said Track No. 9 as well as the other tracks in the yard are used by trains, engines and cars in transporting and handling freight in interstate commerce; and that freight from other states is hauled over said track as well as freight originating in Alexandria and destined for points outside; that to affiant's personal knowledge said Track No. 9 has been in such use by the Railroad Company for many years; that it is also used for switching purposes and for making up and breaking up trains that move into Alexandria from points outside of the State; that it was so used for the above purposes for years before the accident to Dave Dillard and that it has been likewise so used continuously since said accident.

"That said track was not a vacant or dead or condemned track; that it had been closed temporarily for a few hours that day in order to permit certain repairs to be made thereon; that the nature of the repairs consisted of replacing old ties under the rails, lining up the track, putting in ballast and other general track repairs; that during the time said work was being done and as a safeguard to traffic and to the men who were working on said Track No. 9 it was closed for a few hours but that said track was used by trains hauling freight during some time of that particular day and that it has been so used almost daily since the accident to the said Dave Dillard.

"Affiant further deposes and says that Dave Dillard was in the employ of the Missouri-Pacific between four and five months previous to his injury as a member of the Section Gang of which affiant is foreman; that the gang of which affiant is Foreman is called an Extra Gang because it has no definite section of track to work on but is assigned to duty at any place where work is needed to be done and said gang works up and down the line of the Missouri-Pacific at various points; that on the day Dave Dillard was injured, namely April 25, 1944, he was doing the same kind of work that he had been accustomed to doing and which he had been employed to do namely to assist in repairing the tracks of the Railroad Company over which its trains operated to and from the State of Louisiana into other States of the Union."

The gist of the second affidavit (by the assistant superintendent) is that the injury was suffered at the Alexandria Terminal Yard, at track 11; that just prior plaintiff had been working with other members of the Extra Gang on track 9 adjoining; that tracks 9 and 11 are part of a network of railroad tracks used daily by trains operating into and out of Alexandria and hauling freight in interstate commerce; that the tracks in the yard are used continuously by engines and cars hauling such freight.

Affiant further deposes that track 9 was being prepared so as to make it more serviceable for use in handling cars originating out of the state of Louisiana and moved into Louisiana, or cars originating in Louisiana and going out to other states; that because of the repair work being done at the time, the track was not being used during the hours of the day that the men were working on it; that the track was used for the hauling of cars during part of the day of April 25th (the date of injury), when the crew was not engaged in the repair work.

Affiant further deposes that track No. 9 had been used for many years before for hauling cars and for general railroad purposes, and cars had not only been hauled continuously over this track, but cars containing interstate freight had been placed thereon for storage; that trains destined for points outside of Louisiana had been made up on this track; that after the track was repaired it was again used and has been in continuous use for these interstate purposes; that the object of the repair was that trains might operate safely and efficiently; that Dillard's employment on the section crew was to assist generally in the repairing of any tracks; that this was the main part of his duties; and that during the term of his employment he was engaged in this occupation almost daily. Then the affiant deposes that the Missouri Pacific Railroad is engaged in interstate commerce,

operating throughout the states of Missouri, Louisiana, Arkansas, and Texas, and that the Texas & Pacific Railway is likewise an interstate railroad operating throughout the states of Texas, Louisiana and Arkansas.

We believe that with the above facts, the applicable law is simply and clearly the Federal Employers' Liability Act, § 1 et seq., April 22, 1908, c. 149 § 1, 35 Stat. 65, as amended August 11, 1939, c. 685, 53 Stat. 1404, 45 U.S.C.A. § 51 et seq. See the exhaustive historical consideration given to the inclusive significance of the 1939 amendment of the Federal Employers' Liability Act in Southern Pacific Co. v. Industrial Accident Commission, 19 Cal.2d 271, 120 P.2d 880.

Then to show that the cause of action is within the Federal sphere, particularly since the 1939 amendment, and does not arise under the Louisiana law, see the case of Rainwater v. Chicago, Rock Island & Pacific Railway Co., 21 So.2d 428 (by the Louisiana Court of Appeals) and then affirmed (by the Supreme Court) at 207 La. 681, 21 So.2d 872.

█ If the facts of the case bring it under the Federal Employers' Liability Act, "the remedy given by that statute is exclusive, and all state laws are superseded insofar as they attempt to cover the same field." Louisiana & Arkansas R. Co. v. Pratt, 5 Cir., 142 F.2d 847, at page 848.

█ The work of a track repairman, as disclosed by the facts of this case, falls within the provision of the federal act. Kinzell v. Chicago, etc., R. Co., 250 U.S. 130, 39 S.Ct. 412, 63 L.Ed. 893; Louisiana Ry. & Navigation Co. v. Williams, 5 Cir., 272 F. 439, 257 U.S. 610, 42 S.Ct. 48, 66 L.Ed. 396; San Pedro, Los Angeles & Salt Lake R. Co. v. Davide, 9 Cir., 210 F. 870; Tralich v. Chicago, Milwaukee & St. Paul R. Co., D.C., 217 F. 675; Lombardo v. Boston & Maine R.R., D.C., 223 F. 427; Southern R. Co. v. McGuin, 4 Cir., 240 F. 649; Rader v. Baltimore & O. R. Co, 7 Cir., 108 F.2d 980, Baltimore & Ohio R. Co. v. Rader, 309 U.S. 682, 60 S.Ct. 722, 84 L. Ed. 1026. There is a host of other cases in the lower courts. And, since the 1939 amendment, there is no more twilight zone as to the facts as formerly.

Accordingly, we shall sign a judgment, when presented, sustaining the motion for summary judgment herein, dismissing plaintiff's claim.