### HOLL v. SOUTHERN PAC. CO.
No. 25999.

District Court, N. D. California, S. D.
March 19, 1947.

Hildebrand, Bills & McLeod, of Oakland, Cal., for plaintiff.

Dunne & Dunne, of San Francisco, Cal., for defendant.

YANKWICH, District Judge.

The action arises under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The defendant is a railroad company engaged in both interstate and intrastate commerce. The plaintiff is employed by it as an assistant distribution clerk, working in its offices in the Southern Pacific build-

ing at 65 Market Street, San Francisco, California.

In her complaint, she alleges that she was injured on October 24, 1945, at or about the hour of 8 o'clock a. m., while she was coming up in one of the elevators in the building in order to reach her place of business. She seeks to recover $920 for loss of wages and $50,000 as general damages for the injuries she alleges to have suffered.

Her complaint asserts two claims or causes of action: (1) The first alleges careless and negligent operation and control of the elevator, which caused it to be stuck between the third and fourth floors of the building; (2) the second alleges negligence on the part of employees of the defendant who, in removing her from the elevator through the roof, caused her to sustain a severe scraping injury on her right leg.

The evidence showed that she was treated by the company's physicians for contusions of the right leg below the knee, which extended from knee to ankle. She did not return to work until March 2, 1946.

The plaintiff claims recurring pains which make it difficult for her to stand up, and, at times, cause her right leg to flex and make her fall. The clinical reports from the defendant's doctors and hospital negative any bone injury. They also reflect the medical opinion that the accident left no permanent effect. The same medical opinion attributes the physical difficulties of which the plaintiff complains to an arthritic condition.

Were I to determine the extent of the injuries, I would consider the record on the subject so unsatisfactory as to warrant examination of the plaintiff by some orthopedist appointed by the Court under Rule 35 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. However, having reached the conclusion that the plaintiff cannot invoke the benefit of Section 1 of the Federal Employers' Liability Act, as amended in 1939, 45 U.S.C.A. § 51, such action is unnecessary.

The evidence in the case was brief. The incident which led to the claimed injury was described by the plaintiff alone. The defendant offered no eyewitnesses to the occurrence. The clinical and hospital records, including Roentgenograms, were supplied by the defendant and introduced in evidence. The defendant also brought into Court the time cards of the plaintiff during the period involved.

The defendant insists that the testimony of the plaintiff fails to show any negligent act on its part or on the part of its employees.

■ It is axiomatic that recovery under the Employers' Liability Act, including the 1939 Amendment, is dependent upon proof of negligence on the part of the carrier. Jesionowski v. Boston & Maine Railroad, 1947, 67 S.Ct. 401; Ellis v. Union Pacific Railroad Co., 1947, 67 S.Ct. 598.

I expressed doubt, at the trial, whether recovery could be had on the first claim grounded on the application of the doctrine of res ipsa loquitur. This, for the reason that when the elevator was stalled between the two floors, the plaintiff remained standing. In fact, the evidence is clear that there was no sudden jar which caused any one to fall or be thrown against the walls or door of the elevator. The injury of which the plaintiff complains occurred when she was taken out of the stalled elevator. Further consideration of the evidence leads me to the conclusion that, while it is not so strong as one might wish, it warrants the inference that the injury resulted from the negligence of the employees of the defendant. These employees, who have not been identified, in seeking to assist the plaintiff out of the elevator, caused her right leg to be dragged against the roof of the elevator and injured it. Whether the case comes strictly within the doctrine of res ipsa loquitur or not, I believe the evidence is sufficient to prove negligence, as it is uncontradicted and is not challenged as improbable in view of the physical surroundings and circumstances.

■ In this, as in every other type of negligence, the test to be applied in determining the standard of care is that of the reasonable person. I feel that, under the circumstances, the obvious thing to have done would have been to lower a box, chair or ladder into the elevator. This would have given those seeking to pull out the

plaintiff through the roof a leverage which would have prevented her legs dangling against the metallic and hard surfaces around. Endeavoring to pull her out without such leverage necessarily resulted in the swaying of her legs and caused injury. And, as the defendant is responsible for the position in which the plaintiff, without fault, found herself, so it is also responsible for the action of its employees in injuring her while trying to extricate her from such position. And attributing the injury to the manner in which the defendants' employees sought to remove her from the trapped elevator, and inferring negligence from it, we are applying the norm which controls in cases of this character and which has been held sufficient to fasten liability on employers. See Lukon v. Pennsylvania R. Co., 1947, 3 Cir., 131 F.2d 327, 329, 330; Tiller v. Atlantic Coast Line R. Co., 1945, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465; Jesionowski v. Boston & Maine R. R., supra; Ellis v. Union Pacific R. R. Co., supra, and see Raymond J. Moore: Recent Trends in Judicial Interpretation in Railroad cases under the Federal Employers' Liability Act, 1946, 29 Marquette Law Review, 73.

However, despite this conclusion, I am of the view that plaintiff cannot recover because none of her duties while in the employ of the defendant, either before or at the time of the accident, were in "furtherance of interstate or foreign commerce" within the meaning of the 1939 Amendment to the Federal Employers' Liability Act, 45 U.S.C.A. § 51.

■ The aim of the amendment was to "eliminate the necessity of determining whether an employee, at the very instant of his injury or death, was actually engaged in the movement of interstate traffic". Report of the Senate Judiciary Committee, as quoted in Southern Pacific Co. v. Industrial Accident Commission, 1942, 19 Cal.2d 271, at page 278, 120 P.2d 880, 884. See also excerpts from hearings in Ermin v. Pennsylvania Ry. Co., 1941, D.C.N.Y., 36 F.Supp. 936.

■ It was, no doubt, the object of the amendment to enlarge the railroad transportation group to be benefited by the Act.

This was achieved *not by changing the main section,* but by adding a new clause to it. The main section still left the test of liability that the employee be "employed by such carrier in such commerce". However, the new clause increased the group by adding those whose duties, in whole or in part, directly, closely or substantially affect interstate commerce. Shelton v. Thomson, 1945, 7 Cir., 148 F.2d 1, at page 3.

The plaintiff was employed as a clerk in the freight claim department. When a claim for lost or damaged freight came in, she wrote, from memory, on a form, the route over which the freight had traveled. From this, a typist made a typewritten form which went to the auditor, who audited the claim, allowed it and apportioned the loss to the various carriers over the lines of which the shipment had been carried.

The plaintiff had nothing to do with the allowance of the claim, or distributing it to the carriers. Her work was one of a chain of acts, which finally resulted in the allowance of the claim. It involved no exercise of discretion, and was in no way a part of interstate commerce or in furtherance of it.

If she comes under the Act, so does the typist to whom she furnished the list of carriers, and the office boy who may have acted as messenger between the two. And so, for that matter, does every other clerical employee in the department. I do not think that it was the intention of the Congress to include such employees and to withdraw them from the protection of State Employers' Liability Laws. On the contrary, I am of the view that *had Congress intended to include them, it would have amended the first part of Section 51 by omitting the words "in such commerce".* This would have extended the Act to "any person suffering injury while he is employed by such carrier," and would have placed *all employees of interstate railroads under the Act,* whether their work be clerical or not, or in any way connected with the interstate commerce or not. It would have made the sole test *the interstate nature of the business of the carrier.* This it could have done constitutionally even if it had included em-

ployees and activities clearly local and intrastate. See Baltimore & Ohio R. Co. v. Interstate Commerce Commission, 1911, 221 U.S. 612, 618, 31 S.Ct. 621, 55 L.Ed. 878; Southern R. Co. v. United States, 1911, 222 U.S. 20, 26, 32 S.Ct. 2, 56 L.Ed. 72; Texas & Pacific Ry. Co. v. Rigsby, 1916, 241 U.S. 33, 42, 36 S.Ct. 482, 60 L.Ed. 874; National Labor Relations Board v. Jones & Laughlin, Steel Corporation, 1937, 301 U.S. 1, 37, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; United States v. Darby, 1941, 312 U.S. 100, 101, 118-120, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430 and cases in note 3; Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 520-522, 62 S.Ct. 1116, 86 L.Ed. 1638.

But the Congress did not do so. And I do not find in the cases which have arisen under the amendment any judicial sanction for doing it by interpretation. Recovery was allowed to the following employees: Brakeman on a shifting crew (Ermin v. Pennsylvania Ry. Co., supra); car repairman (Southern Pacific Co. v. Industrial Accident Commission, 1942, 19 Cal.2d 271, 120 P.2d 880); switchman in break-up yard (Southern Pacific Co. v. Industrial Accident Commission, 1942, 19 Cal.2d 281, 120 P.2d 887); employees loading barrels of oil to be used in filling lanterns and oil cans used in oiling railroad engines and machines (Harris v. Missouri Pac. R. Co., 1944, 158 Kan. 679, 149 P.2d 342); blacksmith's helper engaged in making locomotive parts (Trucco v. Erie R. Co., 1946, 353 Pa. 320, 45 A.2d 20); brakeman being transported on company conveyance (Northwestern Pacific Ry. Co. v. Industrial Accident Commission, 1946, 73 Cal.App.2d 367, 166 P.2d 334); trackman, employed in spreading cinder ballast in surfacing tracks (Agostino v. Pennsylvania R. Co., 1943, D.C.N.Y., 50 F.Supp. 726); employee of roundhouse, the facilities of which were used in housing and preparing locomotives (Zimmerman v. Scandrett, 1944, D.C.S.C.Wis. 57 F.Supp. 799); member of section crew on way to obtain tools (Patsaw v. Kansas City Southern Ry. Co., 1944, D.C.La., 56 F.Supp. 897); mechanic's helper assisting in repairing automatic stoker in a locomotive (Edwards v. Baltimore & Ohio R. Co., 7 Cir., 1942, 131 F.2d 366); locomotive fireman assisting in freight movements (Kach v. Monessen Southwestern Ry. Co., 1945, 7 Cir. 151 F.2d 400); guard at a terminal (Albright v. Pennsylvania R. Co., 1944, 183 Md. 421, 37 A.2d 870); signalman repairing lighting fixtures of railroad station (Scarborough v. Pennsylvania R. Co., 1944, 154 Pa.Super. 129, 35 A.2d 603); station employee transporting interstate mail (Antonio v. Pennsylvania R. Co., 1944, 155 Pa.Super. 277, 38 A.2d 705); section hand laying rails on roadbed to aid in raising interstate track (Missouri Pac. R. Co. v. Fisher, 1944, 206 Ark. 705, 177 S.W.2d 725); employee loading posts to be used in repairing roadway (Rainwater v. Chicago, R. I. P. Ry. Co., 1945, 207 La. 681, 21 So.2d 872); employee whose duty it was to clean up the railroad's tracks used partly to carry interstate commerce (Piggue v. Baldwin, 1942, 154 Kan. 708, 121 P.2d 183); railroad's emergency flood control worker, whose duty it was to fill sand bags and place them on a flat car which was to move over tracks used for movement in interstate commerce, the bags being placed along the tracks to protect them from existing flood waters (Skanks v. Union Pacific Railroad Co., 1942, 155 Kan. 584, 127 P.2d 431); locomotive fireman on train engaged, in moving empty coal cars coming from outside state to coal mines in state for loading and transportating coal to other states (Louisville & N. R. Co. v. Stephens, 1944, 298 Ky. 328, 182 S.W.2d 447); section laborer helping maintain and repair tracks used for interstate trains. Prader v. Pennsylvania Ry. Co., 1943, 113 Ind.App. 518, 49 N.E.2d 387, 389.

It is quite evident that each of the employees just mentioned, whether switchman, brakeman, trackman, repairman, or oilman, was performing a function connected directly with, or which affected, interstate commerce. Each was doing something in furtherance of interstate commerce, whether he was assisting in the preparation or preservation of rolling stock, equipment, roadbeds, instrumentalities, accessories or materials used for repairs. And each was furthering, i. e., *promoting* or helping along, present or future interstate commerce.

"The word 'furtherance' is a comprehensive term. Its periphery may be vague,

but admittedly it is both large and elastic." Shelton v. Thomson, 1945, 7 Cir., 148 F. 2d 1, 3.

Each of them was doing something which laid the foundation for, and was in aid of another or subsequent act of interstate commerce or a step towards it. And this was true, even of those who were engaged in what might be called "border-line occupations" such as the worker who kept the roundhouse in repair (Zimmerman v. Scandrett, supra), the employee who handled the barrels containing oil used in filling the oil cans used in oiling the engines and the machines of the carrier (Harris v. Missouri Pac. R. Co., supra), or the employee who operated a crane which hoisted car wheels into position for repair on freight trains. Shelton v. Thomson, supra.

And so the courts, in interpreting realistically the intent of the Congress in adopting the new clause extended to them the benefits of the Act. Rightly so.

Roundhouses are necessary to keep rolling stock ready for movement in interstate commerce. Railroad engines and machines need oiling in order to operate. And, as the court said in Shelton v. Thomson, supra, 148 F.2d at page 3: "A car cannot travel even in interstate commerce, without wheels."

But the movement of trains in interstate commerce is not dependent on freight claims, whether adjusted or not. Without attempting to be facetious, one may say: *A train does not travel on a freight claim.*

And it is a far cry from the work which those employees performed and the work of the plaintiff. Her position was that of an amanuensis. Her duties were to perform one step in several which lead to the approval of a claim for lost or damaged freight. Of the three employees who performed the necessary steps, the only one who exercised any discretion was the auditor who finally approved the claim.

Granting that it is important for a railroad company, as for any other business, to maintain a claims division for the adjustment of claims for loss, it is hard to see how the functions performed by subordinate employees in such division can be said to be the furtherance of interstate commerce. Whatever movement in interstate commerce the freight shipment,—as to which the claim for loss or damages was made,—had been a part of, *had already come to an end* at the time the claim came to the department in which the plaintiff was employed. The claim, in the routing of which she participated, merely liquidated the account resulting from such shipment.

*It was neither the conclusion of a movement in interstate commerce nor the beginning of another one.*

It was a separate and distinct activity, unconnected with transportation, and aiming at the liquidation of a claim relating to an interstate commerce movement which had *already been fully completed.* It had no bearing whatsoever upon, and could not affect, any subsequent or future interstate commerce, whether mediate or immediate. It could not, as was the case of workmen in the cases just cited, be the source of such movement or in aid of it.

It is generally known that the defendant and many other large railroad corporations maintain legal departments which handle all kinds of claims asserted against them resulting from the transportation of goods or passengers. If the contention of the plaintiff be correct, then stenographers and other employees in such legal departments, —through whom may be routed for final adjustment, claims against the railroad arising from interstate transportation,—would have to be given the benefit of this Act. I doubt if even the most partisan advocate of remedial legislation of this type would so contend. However, such conclusion would follow inevitably if the position of the plaintiff were sustained.

In sum, I feel that the wording of the 1939 Amendment, its legislative history, and the interpretation which the courts have placed upon it, stand in the way of the plaintiff's right to recovery in this case.

Judgment will, therefore, be for the defendant.